[No. A114235. First Dist., Div. Two. Nov. 13, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
McKINLEY WILLIAM GARRY, Defendant and Appellant.

**COUNSEL**

Jennifer A. Mannix and Tara Mulay, under appointments by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Assistant Attorney General, Catherine A. Rivlin and Allen R. Crown, Deputy Attorneys General, for Plaintiff and Respondent.

Opinion

**LAMBDEN, J.**—Defendant McKinley William Garry seeks reversal of a judgment and probation modification order because both resulted from the trial court's improper denial of his motion to suppress certain evidence obtained when a police officer detained him as he stood in front of his home late one evening in May 2005. We reverse the judgment and order and remand for further proceedings.

## BACKGROUND

### Case No. VCR162584

In December 2002, defendant, after pleading no contest to possession of cocaine base in Solano County Superior Court, received probation and was placed in a rehabilitation program. In 2006, as a result of the matters discussed further in this appeal, defendant's Proposition 36 program was terminated unsuccessfully, and the court required that he be placed in a Delancey Street residential treatment program or, if not accepted into that program, a category I treatment program to be determined by the probation department.

### Case No. VCR178540

In May 2005, the Solano County District Attorney filed an information in Solano County Superior Court. The information charged defendant with one count of possession for sale of cocaine base in violation of Health and Safety Code section 11351.5, and alleged defendant had committed two prior felonies for which he had been convicted and served prison terms within the meaning of Penal Code section 667.5, subdivision (b).

*The Suppression Motion Hearing*

Prior to his jury trial, defendant moved to suppress certain evidence found as a result of a purportedly illegal detention. At the suppression motion hearing, Officer Brian Crutcher testified that he was armed with a baton and gun and in full uniform as he patrolled in a marked police vehicle about 11:23 p.m. on the evening of May 3, 2005, in an area in Vallejo known as "The Crest," which he stated was a high-crime, high-drug area where illegal street drugs were often sold and where police officers had been assaulted.[1] Crutcher observed defendant standing next to a parked car on the corner of

[1] Crutcher could not define the parameters of "The Crest," but described it as a "neighborhood" with "[b]asically the same housing or similar housing that was built at the same time."

Janice and McGrue Streets for five to eight seconds. Prior to this time, Crutcher had not made any arrests on this particular corner, but stated that "[r]ight in that area, I've probably made 40-plus drug-related arrests within the last seven years. I know other officers have been assaulted in that area. I've had people try to assault me. And oftentimes it revolves around the sale of illegal street drugs." He had made "several" arrests on Janice Street, 100 to 150 yards from McGrue Street, including one six months before.

Crutcher turned on the patrol car's spotlight, which emitted a white light, and illuminated defendant. He exited his car, which was "probably" about 35 feet away from defendant, and noticed that defendant looked nervous. Crutcher started walking "briskly" toward him, and defendant "[w]ith a look of kind of nervousness and shock, he started, like, walking backwards . . . and he spontaneously stated, 'I live right there,' and he pointed to a house on his right." Crutcher continued to walk toward defendant, said, "Okay, I just want to confirm that," and asked defendant if he was on probation or parole. Defendant said he was on parole. After hearing this information, Crutcher decided to detain defendant to find out why he was there. He asked defendant if he had any weapons, guns, or knives on him, and defendant indicated he did not.

Crutcher testified that he reached defendant "two and a half, three seconds" after leaving his patrol car, during which time defendant referred to living "right there" and took three or four steps back, Crutcher asked defendant if he was on probation or parole, and defendant answered affirmatively. Shortly thereafter, after defendant "kind of paused," Crutcher reached out and grabbed him, but defendant started to pull away "violently." As defendant continued to actively resist, Crutcher put defendant in an arm-shoulder lock and put him on the ground and handcuffed him. Crutcher arrested defendant and searched him incident to arrest. In defendant's front right jacket pocket, Crutcher found a small brown paper bag that contained two sandwich bags, in which were 13 individually wrapped pieces of suspected rock cocaine, which Crutcher seized.

The only other witness who testified at the suppression motion hearing was Diane Scott, a self-described "ride-along" with Crutcher, who observed events from inside the police car. Scott testified in relevant part that "Crutcher pulled up in the car, walked over to [defendant]. They talked. They had a confrontation." She testified that during the "confrontation" she saw defendant back up, but only "like, a step. Nothing like trying to back up and run away or anything like that." She recalled the two were a certain distance away from her by referring to certain spots in the courtroom, a distance which the court estimated to be 35 to 40 feet. She was not asked how quickly Crutcher approached defendant, and she could not remember whether there were any lights on the patrol car.

The trial court denied defendant's suppression motion. It found that, based on Crutcher's "credible testimony," the encounter occurred in a high-crime area, that there was no evidence that Crutcher had a reasonable suspicion that defendant was committing an offense prior to detaining him, that Crutcher used his spotlight for officer safety because he was going to get out of the vehicle and speak to defendant to determine what he was doing in the area and why he was standing on the corner, and that a consensual contact occurred when Crutcher got out of his patrol car, "simply approached" defendant, and starting to speak to him. The trial court stated: "[Crutcher] didn't yell anything at Mr. Garry. He didn't yell 'Stay where you are. You're under arrest,' or anything like that. He simply approached him, and as he was approaching him, started to speak to Mr. Garry. And one of the things he asked was, 'Are you on probation or parole?' And Mr. Garry was responding to that question and told him that he was on parole. Once Mr. Garry told him he was on parole, I find that the officer had a legal basis to detain Mr. Garry for the purpose of conducting a parole search, which is exactly what he did."

*Further Proceedings*

After a jury trial, the jury found defendant was guilty of possessing cocaine base for sale.[2] Defendant waived jury trial of the prior conviction allegations, and the trial court found them to be true. In May 2006, the court suspended imposition of sentence and placed defendant on three years' probation on the same terms as in case No. VCR162584, ordering that he be placed in a Delancey Street residential treatment program or, if not accepted into that program, a category I treatment program to be determined by the probation department.

Defendant subsequently filed a timely appeal, which referred to both cases and the trial court's motion to suppress ruling.

## DISCUSSION

The Fourth Amendment of the federal Constitution requires state and federal courts to exclude evidence obtained from unreasonable government searches and seizures. (*People v. Williams* (1999) 20 Cal.4th 119, 125 [83 Cal.Rptr.2d 275, 973 P.2d 52].) Penal Code section 1538.5 allows a defendant to move to suppress evidence obtained in an improper seizure. (Pen. Code,

---

[2] In their appellate papers, the parties also discuss the evidence presented at the subsequent trial, including Crutcher's trial testimony about his initial encounter with defendant. We do not discuss this evidence because the only appellate issues defendant raises relate to the trial court's ruling on his pretrial motion to suppress evidence. Our review is limited to the evidence which was before the trial court when it was called upon to rule on that motion. (*People v. Gibbs* (1971) 16 Cal.App.3d 758, 761 [94 Cal.Rptr. 458].)

§ 1538.5.) Our standard of review "is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment." (*People v. Glaser* (1995) 11 Cal.4th 354, 362 [45 Cal.Rptr.2d 425, 902 P.2d 729].)

■ In *In re Manuel G.* (1997) 16 Cal.4th 805 [66 Cal.Rptr.2d 701, 941 P.2d 880], our Supreme Court discussed the differences between consensual encounters and detentions at some length: "Consensual encounters do not trigger Fourth Amendment scrutiny. [Citation.] Unlike detentions, they require no articulable suspicion that the person has committed or is about to commit a crime. [Citation.] [¶] The United States Supreme Court has made it clear that a detention does not occur when a police officer merely approaches an individual on the street and asks a few questions. [Citation.] As long as a reasonable person would feel free to disregard the police and go about his or her business, the encounter is consensual and no reasonable suspicion is required on the part of the officer. Only when the officer, by means of physical force or show of authority, in some manner restrains the individual's liberty, does a seizure occur. [Citations.] '[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.' [Citation.] This test assesses the coercive effect of police conduct as a whole, rather than emphasizing particular details of that conduct in isolation. [Citation.] Circumstances establishing a seizure might include any of the following: the presence of several officers, an officer's display of a weapon, some physical touching of the person, or the use of language or of a tone of voice indicating that compliance with the officer's request might be compelled." (*In re Manuel G., supra,* 16 Cal.4th at p. 821.)

The test for the existence of a show of authority is an objective one and does not take into account the perceptions of the particular person involved. (*In re Manuel G., supra,* 16 Cal.4th at p. 821.) The test is "not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." (*California v. Hodari D.* (1991) 499 U.S. 621, 628 [113 L.Ed.2d 690, 111 S.Ct. 1547].)

Defendant argues Crutcher detained him prior to his admission that he was on parole because "[w]hen a uniformed officer parks his patrol car next to you, shines his spotlight on you, and then proceeds to rapidly walk toward you while asking a series of questions, it is by its very nature an act of

government intimidation. . . . Any reasonable person in [defendant's] position would not have felt free to disregard Crutcher and leave the scene." Defendant's argument concedes that Crutcher did not command defendant to do anything. Instead, defendant relies heavily on Crutcher's nonverbal actions—particularly Crutcher's use of the spotlight and rapid approach—to argue Crutcher employed a level of intimidation that amounted to an unlawful detention.

The People do not contend that Crutcher had a reasonable suspicion to detain defendant before finding out he was on parole.[3] Instead, the People maintain that the evidence provides sufficient support for the trial court's finding that Crutcher used his spotlight to illuminate the high-crime area for his own safety, and then merely approached defendant and asked him if he was on parole. The People point out that Crutcher did not order defendant to stop or to approach him.

We are not aware of a single search and seizure case which discusses all of the relevant circumstances involved in this matter. Therefore, we review California cases, most of them found in the course of our independent research, which discuss police use of spotlights in the course of approaching people in public areas, as well as pertinent cases cited by the parties analyzing police approaches and questioning of people on the street, in order to determine the merit of the parties' arguments.

In *People v. Roth* (1990) 219 Cal.App.3d 211 [268 Cal.Rptr. 66], the only "spotlight" case that the parties to this appeal meaningfully discuss, one of two police officers in a patrol car shone a spotlight on Roth and stopped the patrol car. Both officers got out, and one stood behind the patrol car door and told Roth to approach in order to talk with him. The trial court denied Roth's motion to suppress evidence discovered after Roth approached, although it found a detention had occurred because the officer had " 'issued a command' " to Roth to approach him. (*Id.* at p. 215, fn. 3.) The appellate court, accepting the trial court's factual finding that a "command" had been given (*ibid.*), agreed that a detention had occurred (*id.* at p. 215) because when the officer shone the spotlight, stopped the car, the deputies got out, and the command was given, "a reasonable person would not believe himself or herself free to leave" (*ibid.*).[4]

In *People v. McKelvy* (1972) 23 Cal.App.3d 1027 [100 Cal.Rptr. 661], four officers in a patrol car encountered the defendant at 3:00 a.m. After they

---

[3] For this reason, we do not discuss further defendant's arguments why there was no reasonable suspicion of criminal activity here.

[4] Finding that "[t]he circumstances were devoid of indicia of [the defendant's] involvement in criminal activity," the appellate court reversed the trial court's motion denial. (*People v. Roth, supra,* 219 Cal.App.3d at p. 215.)

turned their spotlight on him and saw him put a dark object in his pocket, they stopped their vehicle and approached him, each armed with either a shotgun or carbine. (*Id.* at p. 1032.) One officer asked defendant to hand over the object he had placed in his pocket, and defendant handed over certain restricted drugs. The appellate court rejected the argument that the defendant had voluntarily consented to a search, reasoning that "defendant was standing in a police spotlight, surrounded by four officers all armed with shotguns or carbines. In these circumstances no matter how politely the officer may have phrased his request for the object, it is apparent that defendant's compliance was in fact under compulsion of a direct command by the officer." (*Id.* at p. 1034.)

On the other hand, in *People v. Rico* (1979) 97 Cal.App.3d 124 [158 Cal.Rptr. 573], a police officer was looking for a car carrying two persons suspected of having been involved in a shooting. The officer drove up beside a possible car and shone his spotlight into it to observe the occupants. Unable to see them, he dropped back behind the car and followed it without employing his emergency lights or otherwise trying to stop the car. After about five minutes, the car pulled over to the side of the road on its own. Noting that the officer had not tried to stop the car and that he "only used his spotlight to get a better look at the occupants," the appellate court found that "[t]his momentary use of the spotlight and the notable absence of any additional overt action is . . . insufficient to be categorized as a detention . . . ." (*Id.* at p. 130.)

In *People v. Franklin* (1987) 192 Cal.App.3d 935 [237 Cal.Rptr. 840] (*Franklin*), a police officer spotted the defendant, Franklin, walking down the street in a seedy neighborhood at midnight wearing a coat that seemed too warm for the weather conditions. When the officer put his patrol car's spotlight on Franklin, Franklin tried to hide a white bundle he was carrying. The officer stopped his car directly behind Franklin and began to use his radio, and Franklin approached the car. The officer got out and met him in the area of the headlights. Without the officer's initiating any conversation, Franklin repeatedly asked, " 'What's going on?' " (*Id.* at p. 938.) Rejecting Franklin's claim that he had been detained as a result of these actions, the appellate court observed that "the officer did not block appellant's way; he directed no verbal requests or commands to appellant. Further, the officer did not alight immediately from his car and pursue appellant. Coupling the spotlight with the officer's parking the patrol car, appellant rightly might feel himself the object of official scrutiny. However, such directed scrutiny does not amount to a detention." (*Id.* at p. 940.)

In *People v. Perez* (1989) 211 Cal.App.3d 1492 [260 Cal.Rptr. 172], a police officer parked his patrol vehicle in front of a car occupied by two

people. The officer left plenty of room for the car to leave. He shone his high beams and spotlights, but not his emergency lights, "in order to get a better look at the occupants and gauge their reactions." (*Id.* at p. 1494.) The car's occupants "slouched over in the front seat" but did not otherwise respond to the lights. (*Ibid.*) The officer walked to the car, tapped on the driver's side window with a lit flashlight, and asked the defendant to roll down his window. The appellate court found that "the conduct of the officer here did not manifest police authority to the degree leading a reasonable person to conclude he was not free to leave. While the use of high beams and spotlights might cause a reasonable person to feel himself the object of official scrutiny, such directed scrutiny does not amount to a detention." (*Id.* at p. 1496.) Of particular importance to the court was that the police officer had parked his car in such a way that it did not block the defendant's car and that the officer had not activated his emergency lights, unlike circumstances in two other cases cited by the appellate court. (*Ibid.*)

The parties to this appeal also cite certain search and seizure cases involving police approaching people on the street that are particularly instructive. In *People v. Terrell* (1999) 69 Cal.App.4th 1246 [82 Cal.Rptr.2d 231], cited by the People, an officer, accompanied by his partner, observed the appellant, Terrell, sitting on a park bench with two men, one of whom seemed under the influence of a controlled substance. (*Id.* at p. 1251.) After engaging Terrell in a brief conversation, the officer asked Terrell for identification, and Terrell handed him his driver's license, which led to the discovery of an outstanding warrant, Terrell's arrest, and the discovery of some heroin. (*Ibid.*) The appellate court found that the totality of circumstances surrounding Terrell's arrest indicated that the initial encounter with police was consensual, noting in particular that neither police officer indicated by words or conduct that Terrell was not free to leave. (*Id.* at p. 1254.)

In *People v. Bennett* (1998) 68 Cal.App.4th 396 [80 Cal.Rptr.2d 323], also cited by the People, a police officer participating in a prostitution sweep saw the defendant, Bennett, talking to a prostitute who had just offered sex for money to an undercover officer. (*Id.* at p. 399.) The officer approached Bennett and asked, " 'Can I talk to you for a moment?' " Bennett replied, " 'Yes.' " (*Ibid.*) When Officer Gonzales inquired whether Bennett was on parole, Bennett again answered in the affirmative. Bennett again agreed when he was asked if he would wait in the back of the police car while Gonzales ran him for warrants, and was " 'very cooperative.' " Bennett was subsequently arrested and searched, and base cocaine was found in his shoe. (*Id.* at p. 399.) The appellate court agreed with the trial court that evidence of the cocaine should not be suppressed because, among other things, the initial encounter was consensual, as the officer was free to approach Bennett and pose the questions he did, spoke in a polite, conversational tone and applied

no physical or verbal force that might have caused a reasonable person to feel compelled to respond. (*Id.* at pp. 402–403.)[5]

On the other hand, in *People v. Jones* (1991) 228 Cal.App.3d 519 [279 Cal.Rptr. 56], cited by defendant, a police officer on patrol in a marked car shortly before 9:00 p.m. saw three men standing in a group near a street corner. (*Id.* at p. 521.) When the officer was about 30 feet from the men, one of them handed the defendant, Jones, what appeared to be money. The officer, knowing the area was one of very high narcotics activity, pulled his patrol car to the wrong side of the road and parked diagonally against the traffic about 10 feet from the group. (*Id.* at p. 522.) As he stepped out of his car, Jones began to walk away, and the officer, who was about five feet away from him at this point, asked him to stop. (*Ibid.*) Jones complied, reaching into a pocket as he did so. Fearing Jones was reaching for a weapon, the officer grabbed him, leading to the discovery of what the officer believed was cocaine and Jones's arrest. (*Ibid.*) The trial court granted the defendant's motion to suppress, and the appellate court affirmed the ruling. (*Id.* at pp. 522–524.) The court noted that the officer parked the police car diagonally against traffic "a mere 10 feet away" and, when Jones started to walk away, said, " ' "Stop. Would you please stop." ' " (*Id.* at p. 523.) It concluded that "[a] reasonable man does not believe he is free to leave when directed to stop by a police officer who has arrived suddenly and parked his car in such a way as to obstruct traffic. Clearly, [Jones] was detained." (*Id.* at p. 523.)

As *In re Manuel G., supra,* 16 Cal.4th at pages 820–821, makes clear, we " 'must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.' " (*Id.* at p. 821.) This includes an examination of both an officer's verbal *and* nonverbal actions in order to "assess[] the coercive effect of police conduct as a whole, rather than emphasizing particular details of that conduct in isolation." (*Ibid.*) In cases such as those we discuss above, an officer's words and verbal tones are always considered. (See *Franklin, supra,* 192 Cal.App.3d at p. 940 [finding no detention, in part because the officer directed no verbal requests or commands]; *People v. Roth, supra,* 219 Cal.App.3d at p. 215 [emphasizing trial court's finding that a verbal command had been issued].) However, these cases also place great significance on how the officers physically approached their subjects. (See *Franklin, supra,* 192 Cal.App.3d at p. 940 [noting that the

---

[5] The People also discuss *In re Frank V.* (1991) 233 Cal.App.3d 1232 [285 Cal.Rptr. 16] in arguing the differences between a request and an order by an officer engaged in an encounter with a civilian. However, that case involved police questioning of a motorcycle passenger who was not the subject of inquiry, and the court analogized him to a bystander (*id.* at pp. 1238–1239), a considerably different factual circumstance than the one presented here.

officer did not try to block appellant's way and finding no detention in part because the officer did not leave his vehicle]; *People v. Perez, supra,* 211 Cal.App.3d at p. 1496 [same]; *People v. Jones, supra,* 228 Cal.App.3d at p. 524 [noting that the officer parked the police car a mere 10 feet away on a diagonal against traffic in a "sudden" approach]; *People v. McKelvy, supra,* 23 Cal.App.3d at p. 1034 [referring to four officers approaching the defendant while displaying shotguns or carbines].) Furthermore, while cases have not found the use of a spotlight alone to constitute a detention (see *People v. Rico, supra,* 97 Cal.App.3d at p. 130; *Franklin, supra,* 192 Cal.App.3d at p. 940; *People v. Perez, supra,* 211 Cal.App.3d at p. 1496), they also indicate its use should be considered in determining whether there was a show of authority sufficient to establish one occurred. (See *People v. Roth, supra,* at p. 215 [referring to the use of a spotlight, among other things, in determining that a reasonable person would not believe he or she was free to leave police behind]; *People v. McKelvy, supra,* at p. 1034 [in finding a detention occurred, referring to the defendant "standing in a police spotlight"]; *People v. Rico, supra,* at p. 130 [finding no detention, in part because the officer's use of a spotlight was "momentary"].)

In the present case, the argument can be made that no detention occurred prior to Crutcher learning about defendant's parole status. Crutcher's testimony indicates that he parked his car 35 feet away from defendant, a considerable distance, had no other officers with him, did not use emergency lights, did not draw a weapon, made no verbal commands, went to defendant rather than asking defendant to come to him, did nothing to prevent defendant from leaving, and did not touch defendant prior to learning that he was on parole.[6]

However, Crutcher's testimony makes clear that his actions, taken as a whole, would be very intimidating to any reasonable person. Crutcher testified that after only five to eight seconds of observing defendant from his marked police vehicle, Crutcher bathed defendant in light, exited his police vehicle, and, armed and in uniform, "briskly" walked 35 feet in "two and a half, three seconds" directly to him while questioning him about his legal status. Furthermore, Crutcher immediately questioned defendant about his probation and parole status, disregarding defendant's indication that he was merely standing outside his home. In other words, rather than engage in a conversation, Crutcher immediately and pointedly inquired about defendant's

---

[6] We also have no reason to disagree with the trial court's determination that Crutcher used his spotlight for officer safety, but "[t]he officer's uncommunicated state of mind . . . [is] irrelevant in assessing whether a seizure triggering Fourth Amendment scrutiny has occurred." (*In re Manuel G., supra,* 16 Cal.4th at p. 821.)

legal status as he quickly approached.[7] We think only one conclusion is possible from this undisputed evidence: that Crutcher's actions constituted a show of authority so intimidating as to communicate to any reasonable person that he or she was " 'not free to decline [his] requests or otherwise terminate the encounter.' " (*In re Manuel G., supra*, 16 Cal.4th at p. 821.)

We find a detention occurred despite the fact that Crutcher did not make any verbal commands. "It is not the nature of the question or request made by the authorities, but rather the manner or mode in which it is put to the citizen that guides us in deciding whether compliance was voluntary or not." (*Franklin, supra*, 192 Cal.App.3d at p. 941.) No matter how politely Crutcher may have stated his probation/parole question, any reasonable person who found himself in defendant's circumstances, suddenly illuminated by a police spotlight with a uniformed, armed officer rushing directly at him asking about his legal status, would believe themselves to be "under compulsion of a direct command by the officer." (*People v. McKelvy, supra*, 23 Cal.App.3d at p. 1034.) Crutcher's actions set an unmistakable "tone," albeit largely through nonverbal means, "indicating that compliance with the officer's request might be compelled." (*In re Manuel G., supra*, 16 Cal.4th at p. 821.)

The trial court's statement at the conclusion of the suppression motion hearing indicates that it did not give proper weight to all of the circumstances in denying defendant's suppression motion. Instead, the court placed undue emphasis on the one fact that Crutcher did not issue any verbal commands to defendant. In doing so, the court did not sufficiently consider the combined, intimidating effect of Crutcher's actions. Furthermore, the court's finding that Crutcher "simply approached" defendant and "started to speak" to him was not supported by substantial evidence. Rather, Crutcher's testimony indicates that Crutcher, immediately after spotlighting defendant, all but ran directly at him, covering 35 feet in just two and one-half to three seconds, asking defendant about his legal status as he did so. These were significantly different, more aggressive, and intimidating actions than indicated by the trial court's characterizations.

Accordingly, we find the trial court erred when it found no detention occurred prior to Crutcher learning defendant was on parole. Defendant's motion should have been granted and the drug evidence found on him suppressed.

---

[7] Defendant's ready response to Crutcher's question demonstrates that he had submitted to Crutcher's show of authority by this point.

## DISPOSITION

The trial court's judgment in case No. VCR178540 and its probation modification order in case No. VCR162584 are reversed, and the matters remanded for further proceedings consistent with this opinion

Kline, P. J., and Richman, J., concurred.

On November 29, 2007, the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied March 12, 2008, S159619. Moreno, J., did not participate therein. Baxter, J., and Corrigan, J., were of the opinion that the petition should be granted.