Filed 1/3/14  P. v. Glass CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARCUS DWAYNE GLASS,<br><br>    Defendant and Appellant. | H039285<br>(Santa Clara County<br>Super. Ct. No. C1227568) |

Defendant Marcus Dwayne Glass appeals from a judgment of conviction entered after he pleaded guilty to grand theft of personal property with a value over $950 (Pen. Code, §§ 484, 487, subd. (a)), petty theft with three or more priors (Pen. Code, § 666, subd. (a)), and receiving stolen property (Pen. Code, § 496, subd. (a)).  Defendant also admitted that he had a prior strike conviction (Pen. Code, §§ 667, subds. (b)-(i), 1170.12) and that he had served three prior prison terms (Pen. Code, § 667.5, subd. (b)).  The trial court sentenced defendant to seven years in state prison.  On appeal, defendant contends that the trial court erred when it denied his motion to suppress evidence.  We find no error and affirm the judgment.

# I. Statement of Facts[1]

At approximately 4:18 a.m. on March 6, 2012, Officer Jason Park was patrolling the area of Martin Avenue and Mount Rushmore in San Jose in a marked patrol car when he saw defendant walking out of the parking lot of an elementary school. The area was "pretty dark." Officer Park pulled his car to the curb and flashed his spotlight on defendant, who was approximately 10 to 20 feet away. The officer's car was not blocking defendant from walking in either direction on the sidewalk. Officer Park exited his car, did not draw his weapon, and did not tell defendant to stop. With the patrol car between him and defendant, the officer asked defendant what he was doing in the parking lot. Defendant replied that he was coming from a friend's house. The officer also asked him where he was going and where he lived. In response to Officer Park's questioning, defendant stated that he had previously been arrested for "possession" and he was on parole. Defendant also gave his name and date of birth. Officer Park spoke to defendant "in a conversational manner, very calm voice, very low voice."

After defendant continued walking northbound on Mount Rushmore, Officer Park conducted a records check and pulled up information on CLETS indicating that defendant was "a parolee at large." The officer went immediately northbound on Mount Rushmore to locate defendant, who was two to three blocks away. Officer Park said, "Hey, can you come over here, there's something that happened down the street. I need to investigate it a little further." When defendant walked over to the officer, he placed him in handcuffs. Officer Park searched defendant and found an identification card and a social security card. The officer then conducted another records check through dispatch to confirm the information on CLETS that defendant was absconding and that a warrant was out for his arrest.

---

[1]     The statement of facts is based on the evidence presented at the hearing on the motion to suppress evidence.

Officer Park also conducted a search of defendant's computer bag. The computer bag contained a laptop, a camera, an iPhone, an iPod, DMV registration, a checkbook, and an external hard drive. Officer Park later confirmed that these items had been stolen.

## II. Discussion

Defendant contends that the trial court erred when it denied his motion to suppress evidence. Defendant contends that the initial contact between him and Officer Park constituted an unlawful detention that was unsupported by reasonable suspicion. Thus, he asserts that all statements and evidence found during his contacts with the officer required suppression.

The Fourth Amendment, made applicable to the states through the due process clause of the Fourteenth Amendment, protects the individual against unreasonable searches and seizures. (*Mapp v. Ohio* (1961) 367 U.S. 643, 656-660.) When a police officer engages in conduct that violates the Fourth Amendment, the evidence obtained through such conduct is subject to the exclusionary rule. (*People v. Mayfield* (1997) 14 Cal.4th 668, 760.)

"For purposes of Fourth Amendment analysis, there are basically three different categories or levels of police 'contacts' or 'interactions' with individuals, ranging from the least to the most intrusive. First, there are . . . 'consensual encounters' [citation], which are those police-individual interactions which result in no restraint of an individual's liberty whatsoever—i.e., no 'seizure,' however minimal—and which may properly be initiated by police officers even if they lack any 'objective justification.' [Citation.] Second, there are . . . 'detentions,' seizures of an individual which are strictly limited in duration, scope and purpose, and which may be undertaken by the police 'if there is an articulable suspicion that a person has committed or is about to commit a crime.' [Citation.] Third, and finally, there are those seizures of an individual which exceed the permissible limits of a detention, seizures which include formal arrests and

3

restraints on an individual's liberty which are comparable to an arrest, and which are constitutionally permissible only if the police have probable cause to arrest the individual for a crime." (*Wilson v. Superior Court* (1983) 34 Cal.3d 777, 784.)

In determining whether an encounter between a police officer and an individual constitutes a detention, we note that a "seizure does not occur simply because a police officer approaches an individual and asks a few questions." (*Florida v. Bostick* (1991) 501 U.S. 429, 434 (*Bostick*).) For Fourth Amendment purposes, "a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained." (*United States v. Mendenhall* (1980) 446 U.S. 544, 553.) "[T]o determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." (*Bostick,* at p. 439.) "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual [citations]; ask to examine the individual's identification [citations]; and request to search his or her luggage [citation]—as long as the police do not convey a message that compliance with their requests is required." (*Bostick*, at pp. 434-435.) "Circumstances establishing a seizure might include any of the following: the presence of several officers, an officer's display of a weapon, some physical touching of the person, or the use of language or of a tone of voice indicating that compliance with the officer's request might be compelled." (*In re Manuel G.* (1997) 16 Cal.4th 805, 821.) "The officer's uncommunicated state of mind and the individual citizen's subjective belief are irrelevant in assessing whether a seizure triggering Fourth Amendment scrutiny has occurred." (*Ibid.*)

"'The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found,

4

the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment.  [Citations.]' " (*People v. Weaver* (2001) 26 Cal.4th 876, 924, quoting *People v. Glaser* (1995) 11 Cal.4th 354, 362.)

Here, the officer's initial contact with defendant did not constitute a detention.  A single police officer pulled to the side of the street when he saw defendant walking out of an elementary school parking lot at 4:00 a.m.  The area was "pretty dark" and the officer shined his spotlight on defendant, who was 10 to 20 feet away.  He asked defendant "in a conversational manner" and with a "very calm voice" what he was doing in the parking lot.  After defendant replied that he was coming from a friend's house, the officer then asked him a series of questions, including whether he was on probation or parole.  However, the officer did not block defendant's path, draw his weapon, or command defendant to stop.  Moreover, the officer remained by the door to his patrol car and did not approach or touch defendant.  Defendant then continued walking down the street and the officer made no attempt to stop him.  Thus, in considering the totality of the circumstances, the officer's conduct would not "have communicated to a reasonable person that the person was not free to decline the officer['s] requests or otherwise terminate the encounter." (*Bostick, supra*, 501 U.S. at p. 439.)  Accordingly, the trial court did not err when it denied defendant's motion to suppress evidence.

*People v. Garry* (2007) 156 Cal.App.4th 1100 does not persuade us otherwise.  In *Garry*, the officer turned on his patrol car's spotlight and shined it on the defendant, who was standing on a corner about 35 feet away.  (*Id.* at p. 1104.)  The officer then exited his car and walked " 'briskly' " toward the defendant, who said, " ' "I live right here," ' " and pointed to a nearby house.  (*Ibid.*)  The officer responded that he wanted to confirm that, asked the defendant if he was on probation or parole, and reached the defendant within " 'two and a half, three seconds' " after leaving his car.  (*Ibid.*)  *Garry* held that, based on the officer's very intimidating actions, a detention occurred.  (*Id.* at p. 1112.)  Here, in contrast to *Garry*, the officer remained at his patrol car rather than rushing toward

5

defendant and did not immediately ask him about his legal status. Moreover, after his very brief interaction with the officer, defendant continued walking down the street without any interference from the officer. Thus, *Garry* is factually distinguishable from the present case.

### III.  Disposition

The judgment is affirmed.

_____
Mihara, J.

WE CONCUR:

_____
Elia, Acting P. J.

_____
Grover, J.

6