Filed 3/3/14  P. v. Guess CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C073648 |
| Plaintiff and Respondent, | (Super. Ct. No. 13F00949) |
| v. | |
| PAUL THOMAS GUESS, | |
| Defendant and Appellant. | |

Police contacted defendant Paul Guess after a neighbor reported him sleeping in front of a home.  During their conversation with defendant, the officers requested permission to search him.  He consented; they found methamphetamine and Ambien on him.  After the magistrate denied his motion to suppress, he pled no contest to possession of methamphetamine for the purposes of sale.  He now appeals, arguing the officers unlawfully detained him and his consent to be searched was a product of the unlawful detention.  We disagree and affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

Around midnight on a night in February, a neighbor called police to report a man sleeping in front of a house; two officers were sent to check out the situation. The officers were in standard uniforms with guns on their utility belts.

The officers arrived at the home in separate vehicles and saw a man sitting in front of the house with his face down. The officers parked a couple of houses down from where the man was sitting, walked up to the house, and asked him why he was there. The man said that his friend lived there and that he was waiting for her to return home. One of the officers asked the man for his name and the man responded that his name was Paul Guess (defendant). The officer then asked defendant for his identification and defendant pulled his identification from his pocket and handed it to the officer. The name defendant gave and the name on his identification were consistent.

The officer then asked defendant if he was on probation or parole and defendant said he was not. The officer asked if he could search defendant for anything illegal and defendant said, " '[g]o ahead.' " The officer found a bag with two and one-half white pills; the pills were Ambien. The officer also found another bag with a white crystalline substance that turned out to be methamphetamine. Defendant did not have a prescription for the Ambien.

Defendant was charged with possession of methamphetamine for the purpose of sale and possession of zolpidem tartrate (Ambien). He filed a motion to suppress. The magistrate denied the motion, finding that defendant was detained relying on *People v. Castaneda* (1995) 35 Cal.App.4th 1222 but was still able to consent and had validly consented to the search. Defendant pled no contest to possession of methamphetamine for the purposes of sale and was sentenced to county jail for two years.

DISCUSSION

Defendant argues that "[u]nder the totality of the circumstances, [he] was unlawfully detained -- a reasonable person would not have felt free to terminate the

2

encounter with the police. [His] consent to search was the product of the unlawful detention and therefore [his] motion to suppress should have been granted." We disagree. We find this was a consensual encounter, not a detention, and therefore defendant's consent was not the product of an unlawful detention.

In reviewing the denial of a motion to suppress, we must accept all facts in support of the ruling, including all reasonable inferences and deductions, if supported by substantial evidence. (*People v. Miranda* (1993) 17 Cal.App.4th 917, 922.)

A police officer may approach an individual in a public place and ask questions without implicating the Fourth Amendment to the United States Constitution. "The United States Supreme Court has made it clear that a detention does not occur when a police officer merely approaches an individual on the street and asks a few questions. [Citation.] As long as a reasonable person would feel free to disregard the police and go about his or her business, the encounter is consensual and no reasonable suspicion is required on the part of the officer. Only when the officer, by means of physical force or show of authority, in some manner restrains the individual's liberty, does a seizure occur." (*In re Manuel G.* (1997) 16 Cal.4th 805, 821.) "[T]o determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." (*Florida v. Bostick* (1991) 501 U.S. 429, 439 [115 L.Ed.2d 389, 401-402].) Circumstances establishing a seizure might include any of the following: the presence of several officers, an officer's display of a weapon, some physical touching of the person, or the use of language or of a tone of voice indicating that compliance with the officer's request might be compelled. (*United States v. Mendenhall* (1980) 446 U.S. 544, 554 [64 L.Ed.2d 497, 509].)

Defendant argues the totality of the circumstances here, "including maintaining custody of [his] identification even in the face of his truthfulness, demonstrate[s] an

3

unlawful detention." We disagree. Under the totality of the circumstances, defendant was not detained.

Defendant contends that taking someone's identification "can have an inherently coercive effect and cause a reasonable person to believe he or she is not free to terminate the encounter." Defendant relies on two cases to support this argument. We are not persuaded.

First, in *Florida v. Royer* (1983) 460 U.S. 491, 501 [75 L.Ed.2d 229, 239], the court considered the totality of the circumstances and found that the defendant turning over his identification was *part* of the reason the defendant had been detained. The court in *Royer* concluded that "[a]sking for and examining Royer's ticket and his driver's license were no doubt permissible in themselves, but when the officers identified themselves as narcotics agents, told Royer that he was suspected of transporting narcotics, and asked him to accompany them to the police room, while retaining his ticket and driver's license and without indicating in any way that he was free to depart, Royer was effectively seized for the purposes of the Fourth Amendment." (*Ibid.*)

In the instant case, the officer completed the permissible action of asking defendant for his identification. But contrary to defendant's argument, there is nothing to suggest that the officers exhibited more coercive behavior. There are no facts indicating that the officers told defendant they suspected him of anything or asked him to accompany them anywhere.

It is apparently true that the officer still had defendant's identification in his possession when he asked defendant if defendant was on probation or parole and if he could search defendant for anything illegal. On this limited evidence, we cannot conclude that a reasonable person would have felt he could not ask for his identification back and/or refuse to answer the officer's questions.

Second, defendant points to *Castaneda* for the statement that "once Castaneda complied with [the officer's] request and submitted his identification card to the officers,

4

a reasonable person would not have felt free to leave." (*People v. Castaneda*, *supra*, 35 Cal.App.4th at p. 1227.)  To the extent the *Castaneda* court intended to conclude that a person is always detained when one hands over identification to the police, we disagree.[1] While handing an officer identification is certainly one fact to consider in the totality of the circumstances, we are unwilling to say that doing so is a detention in every case.  The test for a detention remains whether, based on the totality of the circumstances, a reasonable person would not feel free to disregard an officer and otherwise go about his or her business because of the officer's use of physical force or show of authority.

As defendant acknowledges, "[t]here is recent authority deciding that voluntary relinquishment of identification does not, by itself, equate to a detention or seizure."  The court in *People v. Leath* (2013) 217 Cal.App.4th 344, 353 rejected *Castaneda* and adopted the rule that "a voluntary relinquishment of one's identification card does not constitute a seizure as long as the encounter is consensual under the totality of the circumstances."  We agree.  Here, considering the totality of the circumstances, this was a consensual encounter.

Defendant also argues that "*People v. Garry* [(2007)] 156 Cal.App.4th 1100 supports [his] argument that the totality of the circumstances show the encounter ripened into an unlawful detention."  We disagree.  In *Garry*, the officer shone the patrol car's spotlight on the defendant, parked and got out of his car, " 'briskly' " walked toward the defendant, and immediately asked the defendant whether he was on probation or parole.

---

[1]    There is some ambiguity in *Castaneda* because the court there concluded that the defendant was detained once the officers began writing him a ticket, leaving the possibility that he was not detained until that time. (*People v. Castaneda*, *supra*, 35 Cal.App.4th at p. 1227.)  On the other hand, the statement that a reasonable person would not have felt free to leave once he or she complied with the officer's request for identification suggests the *Castaneda* court found the detention occurred at that time, before the ticket writing began.  We disagree with *Castaneda* to the extent the case suggests a bright-line rule fixed on the handing over of identification.

(*Id.* at pp. 1111-1112.)  The officer intimidated the defendant so much that he looked shocked, backed up a few steps, and blurted out that he lived in a nearby house.  (*Id.* at p. 1104.)  While the court in *Garry* found a detention, the facts here do not amount to the same level of intimidation.  Here, there is nothing in the record to indicate the officers shone a spotlight, or even a flashlight, at defendant.  Additionally, the officers began the encounter by asking defendant routine questions rather than immediately asking him if he was on probation or parole.  Accordingly, there are no facts here that indicate defendant was detained through a show of authority.

DISPOSITION

The judgment is affirmed.


                                        ROBIE            , J.



We concur:



     NICHOLSON     , Acting P. J.



     HOCH          , J.


6