Filed 8/19/15  P. v. Jackson CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,  Plaintiff and Respondent,  v.  ALFRED JACKSON,  Defendant and Appellant. | D066137  (Super. Ct. No. SCD247846) |

APPEAL from a judgment of the Superior Court of San Diego County, Joseph P. Brannigan and Melinda J. Lasater, Judges.  Reversed.

Steven A. Brody, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., Stacy Tyler, and Marilyn L. George, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Alfred Jackson of misdemeanor possession of marijuana. (Health & Saf. Code, § 11357, subd. (c).) The court sentenced Jackson to five years probation.

Jackson appeals. He contends the trial court erred by denying his motion to suppress evidence (Pen. Code, § 1538.5) and by denying his request for the release of juror information following the verdict (Code Civ. Proc., § 237). We agree the court should have granted Jackson's motion to suppress. Because that error was prejudicial, we reverse Jackson's conviction. We therefore need not reach Jackson's second claim of error.

FACTS

In April 2013, Jackson was seated in the front passenger seat of a parked Honda Accord at the intersection of Skyline Drive and Billow Drive in San Diego. Chauncey Smith was seated in the driver's seat. The area is known for high rates of crime, including drug sales and prostitution. It was nighttime.

Two police officers in a marked patrol car drove up and stopped in the middle of the street, perpendicular to the Honda (forming a "T" shape), approximately 15 to 20 feet away. The patrol car did not physically block the Honda. The police illuminated the Honda with the patrol car's headlights and two spotlights. As the police officers exited their patrol car, Jackson got out of the Honda, took several steps backwards, and stood on the sidewalk. One of the police officers, Chris Cummings, walked towards Jackson, covering the distance in four to five seconds. The officers were in full uniform with guns and badges. Jackson appeared nervous. Cummings asked where Jackson and Smith

2

lived. Smith pointed to the nearest house and said, "We live right there." A records check revealed that neither Jackson nor Smith was listed as living at that address.

Cummings could smell marijuana, but he was not sure whether it was coming from Jackson or the Honda. Cummings told Jackson there had been a lot of crimes in that area. Cummings asked whether Jackson was on probation or parole. Jackson said he was on parole; a records check showed that Jackson was on federal parole. The check did not reveal whether a Fourth Amendment waiver was a condition of Jackson's parole. Cummings handcuffed Jackson for the officers' safety but told Jackson he was not under arrest. Cummings searched Jackson's person and found $2,270 in cash and two cell phones. One of the phones was a prepaid phone with no contacts, no call log, no photographs, and no text messages.

The police discovered Smith was on probation and subject to a Fourth Amendment waiver. They searched the Honda and found two 1-gallon Ziploc bags containing marijuana underneath the front passenger seat. It would have been impossible to sit in the passenger seat and not see or smell the marijuana. Jackson was arrested and later charged with possession of marijuana for sale. (Health & Saf. Code, § 11359.)

At trial, police officers testified regarding the circumstances of Jackson's arrest and the evidence found on his person and in the Honda. Jackson testified in his own defense. He claimed the cash was a product of his home remodeling business and denied knowing about the marijuana in the Honda. Jackson said he had two phones because his older one was not working well. He explained that his girlfriend lived in the house near

3

where the Honda was parked and he was visiting her that night.  Other prosecution and defense witnesses also testified.

## DISCUSSION

## I

Prior to trial, Jackson moved to suppress evidence concerning the circumstances of his arrest, the money and cell phones found on his person, and the marijuana found in the Honda.  (Pen. Code, § 1538.5.)  Jackson argued that a warrantless search, as occurred here, is presumptively illegal.  (See *People v. Williams* (1998) 20 Cal.4th 119, 136.)  The district attorney opposed, and the court held an evidentiary hearing.

At the evidentiary hearing, Cummings and his partner testified regarding Jackson's arrest.  They described their interactions with Jackson and Smith, their records checks, and their search of Jackson and the Honda.  Cummings said they noticed the Honda because it was parked in an area of high narcotics use.  During the encounter, neither Cummings nor his partner drew their weapons or raised their voices.

The trial court denied Jackson's motion to suppress.  It found that the officers' initial encounter with Jackson and Smith was consensual; it was not a detention for purposes of the Fourth Amendment.  The court explained, "it doesn't appear to me that the officers' verbal and nonverbal actions had a coercive effect . . . that would indicate someone was not free to leave."  The court characterized the question as "close" but concluded that Jackson had not been detained when Cummings approached him.

4

"The Fourth Amendment to the United States Constitution prohibits the seizures of persons, including brief investigative stops, when they are 'unreasonable.' [Citations.] Our state Constitution has a similar provision. (Cal. Const., art. I, § 13.) A seizure occurs whenever a police officer 'by means of physical force or show of authority' restrains the liberty of a person to walk away." (*People v. Souza* (1994) 9 Cal.4th 224, 229.) "Challenges to the admissibility of evidence obtained by a police search and seizure are reviewed under federal constitutional standards." (*People v. Schmitz* (2012) 55 Cal.4th 909, 916.)

"Police contacts with individuals may be placed into three broad categories ranging from the least to the most intrusive: consensual encounters that result in no restraint of liberty whatsoever; detentions, which are seizures of an individual that are strictly limited in duration, scope, and purpose; and formal arrests or comparable restraints on an individual's liberty. [Citations.] Our present inquiry concerns the distinction between consensual encounters and detentions. Consensual encounters do not trigger Fourth Amendment scrutiny. [Citation.] Unlike detentions, they require no articulable suspicion that the person has committed or is about to commit a crime." (*In re Manuel G.* (1997) 16 Cal.4th 805, 821 (*Manuel G.*).)

No party to this appeal contends the police had any articulable suspicion that would justify a detention when police approached the Honda in which Jackson was sitting. We must therefore determine whether Jackson's encounter with police was consensual or whether it was an illegal detention.

"The United States Supreme Court has made it clear that a detention does not occur when a police officer merely approaches an individual on the street and asks a few questions. [Citation.] As long as a reasonable person would feel free to disregard the police and go about his or her business, the encounter is consensual and no reasonable suspicion is required on the part of the officer. Only when the officer, by means of physical force or show of authority, in some manner physically restrains the individual's liberty, does a seizure occur. [Citations.] '[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.' [Citation.] This test assesses the coercive effect of police conduct as a whole, rather than emphasizing particular details of that conduct in isolation." (*Manuel G., supra*, 16 Cal.4th at p. 821.)

"The standards for appellate review of the trial court's determination on a motion to suppress pursuant to [Penal Code] section 1538.5 are well settled. The trial court's factual determinations are reviewed under the deferential substantial evidence standard; its determination of the applicable rule of law is scrutinized under the standard of independent review. [Citation.] We independently assess as a question of law whether, under such facts as found by the trial court, the challenged action by the police was constitutional." (*People v. Coulombe* (2000) 86 Cal.App.4th 52, 55-56; see *People v. Zamudio* (2008) 43 Cal.4th 327, 342.)

6

The parties, here as in the trial court, have analogized this case to *People v. Garry* (2007) 156 Cal.App.4th 1100 (*Garry*), in which an illegal detention was found on similar facts. In *Garry*, a police officer in a marked police vehicle was patrolling a high-crime area. (*Id.* at p. 1103.) The court related the circumstances of the detention as follows: "[The officer] turned on the patrol car's spotlight, which emitted a white light, and illuminated defendant. [The officer] exited his car, which was 'probably' about 35 feet away from defendant, and noticed that defendant looked nervous. [The officer] started walking 'briskly' toward him, and defendant '[w]ith a look of kind of nervousness and shock, he started, like, walking backwards . . . and he spontaneously stated, "I live right there," and he pointed to a house on his right.' [The officer] continued to walk toward defendant, said, 'Okay, I just want to confirm that,' and asked defendant if he was on probation or parole. Defendant said he was on parole. After hearing this information, [the officer] decided to detain defendant to find out why he was there." (*Id.* at p. 1104.)

*Garry* concluded that the defendant had been detained before the officer began to ask any questions. (*Garry, supra*, 156 Cal.App.4th at p. 1112.) "No matter how politely [the officer] may have stated his probation/parole question, any reasonable person who found himself in defendant's circumstances, suddenly illuminated by a police spotlight with a uniformed, armed officer rushing directly at him asking about his legal status, would believe themselves to be 'under compulsion of a direct command by the officer.' [Citation.] [The officer's] actions set an unmistakable 'tone,' albeit largely through nonverbal means, 'indicating that compliance with the officer's request might be compelled." (*Ibid.*)

7

The facts here differ from *Garry* in several ways.  On one hand, aspects of the police show of force here would be less intimidating to a reasonable person.  The officers did not rush towards Jackson and Smith; they walked calmly toward them.  (See *Garry, supra*, 156 Cal.App.4th at p. 1112.)  The officers also began by questioning whether Jackson and Smith lived in the neighborhood, instead of first asking about their legal status.  (See *id.* at pp. 1111-1112.)  On the other hand, aspects of the police show of force here would be more intimidating to a reasonable person.  Two police officers were involved here, rather than just one.[1]  Two spotlights were used to illuminate the Honda, rather than just one.  The officers also stopped their car in an unusual manner, perpendicular to the curb and aimed directly at the Honda only 15 to 20 feet away.  The officers here exited their car immediately after stopping and walked towards the Honda.  By contrast, in *Garry*, the police officer parked his car 35 feet away, and the officer illuminated the defendant and exited the car after five to eight seconds of observation.  (*Garry, supra*, 156 Cal.App.4th at pp. 1104, 1111.)  On balance, we conclude the circumstances here were more intimidating than those present in *Garry*.  *Garry* therefore counsels against the conclusion the encounter here was consensual.

Considering the circumstances as a whole, a reasonable person in Jackson's position would not have felt free to leave the scene at the time the police approached him.  (See *Manuel G., supra*, 16 Cal.4th at p. 821; *Garry*, *supra*, 156 Cal.App.4th at pp. 1111-

---

[1]     In *Garry*, a "ride-along," who does not appear to be a police officer, was present in the police car but did not exit the vehicle.  (*Garry, supra*, 156 Cal.App.4th at p. 1104.)

1112.) As Jackson sat in the Honda, a marked patrol car stopped in the middle of the street, perpendicular to the Honda, approximately 15 to 20 feet away. (See *People v. Jones* (1991) 228 Cal.App.3d 519, 523 [finding detention where, among other circumstances, police "parked [the police car] diagonally against traffic"].) The patrol car illuminated the Honda with its headlights and two spotlights. Two uniformed police officers, with badges and guns, immediately exited the patrol car, approached the Honda, and began asking questions. The authority on display was clear.[2] Even though the officers did not physically block Jackson or the Honda from leaving, a reasonable person would not have felt free to disregard the police and leave the scene. Because the police did not have any articulable suspicion concerning Jackson, he was illegally detained. (See *Manuel G.*, at p. 821; *Garry*, at pp. 1111-1112.)

The evidence obtained following Jackson's detention must be excluded as "fruit of the poisonous tree" unless it was obtained by means sufficiently distinguishable to be purged of the taint of the illegal detention. (*Wong Sun v. United States* (1963) 371 U.S. 471, 488; *People v. Brendlin* (2008) 45 Cal.4th 262, 268.) Despite Jackson's discussion of this principle in his opening brief, the Attorney General does not invoke this exception or provide any reason why it should be applied here.

---

[2] We note that Cummings, the police officer who questioned Jackson, testified that he did *not* believe Jackson was free to go at the time he and his partner pulled their patrol car up to the Honda. Our Supreme Court has held that an officer's "uncommunicated state of mind . . . [is] irrelevant in assessing whether a seizure triggering Fourth Amendment scrutiny has occurred." (*Manuel G.*, *supra*, 16 Cal.4th at p. 821.) We are bound to adhere to this precedent. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

9

Instead, the Attorney General argues, without any citation to authority, that the evidence would have been "inevitably discovered." "The inevitable discovery doctrine acts as an exception to the exclusionary rule, and permits the admission of otherwise excluded evidence 'if the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police.' " (*People v. Hughston* (2008) 168 Cal.App.4th 1062, 1071.) "[T]o justify application of the inevitable discovery exception, respondent must demonstrate by a preponderance of the evidence that, due to a separate line of investigation, application of routine police procedures, or some other circumstance, [the challenged evidence] would have been discovered by lawful means. The showing must be based not on speculation but on 'demonstrated historical facts capable of ready verification or impeachment. [Citation.] The inevitable discovery exception requires the court ' "to determine, viewing affairs as they existed at the instant before the unlawful search, what *would have happened* had the unlawful search never occurred." ' " (*Id.* at p. 1072.) Here, there was no independent investigation or other police work involving Jackson prior to the illegal detention. The contention that, absent that detention, incriminating evidence regarding Jackson would have been found by other means is speculation. The Attorney General points to the smell of marijuana, but that smell was only discovered as a result of the illegal detention. It therefore cannot provide a basis for the inevitable discovery doctrine.

The Attorney General also appears to argue that Jackson's status as a federal parolee can prevent the exclusion of the challenged evidence. There is no evidence,

10

however, that Jackson's federal parole included a Fourth Amendment waiver. Moreover, in order to justify a detention, police officers must be aware of the waiver prior to the challenged search. (See *People v. Sanders* (2003) 31 Cal.4th 318, 335.) An illegal detention or search is not lawful merely because an officer subsequently discovers facts that would have provided a basis for the detention or search. (See *ibid.*)

Accordingly, the trial court erred when it found Jackson had not been detained and denied Jackson's motion to suppress. Admission of the challenged evidence violated Jackson's Fourth Amendment rights. Such an error is prejudicial unless the People show, beyond a reasonable doubt, that the error did not contribute to the verdict. (See *Chambers v. Maroney* (1970) 399 U.S. 42, 52-53; see also *People v. Sims* (1993) 5 Cal.4th 405, 475; *People v. Avila* (1995) 35 Cal.App.4th 642, 654.) The Attorney General does not attempt to make such a showing. Given the nature of the challenged evidence, the prejudicial effect of the error is clear.

DISPOSITION

The judgment is reversed.

O'ROURKE, J.

WE CONCUR:

McDONALD, Acting P. J.

McINTYRE, J.