[No. A049259. First Dist., Div. Two. Mar. 14, 1991.]

THE PEOPLE, Plaintiff and Appellant, v.
CALVIN COOLIDGE JONES, Defendant and Respondent.

COUNSEL

Daniel E. Lungren, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Aileen Bunney and Frances Marie Dogan, Deputy Attorneys General, for Plaintiff and Appellant.

Jay B. Gaskill, Public Defender, and Scott Spear, Assistant Public Defender, for Defendant and Respondent.

OPINION

**PETERSON, J.**—The People appeal from an order dismissing a criminal action against respondent, Calvin Coolidge Jones. They claim the trial court erred when it granted respondent's motion to suppress evidence. We disagree and affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Shortly before 9 p.m. on August 31, 1989, Oakland Police Officer James Burns was on patrol in a marked car when he saw three men standing in a group near the corner of 12th and Peralta Streets. When Burns was about 30 feet from the men, one of them handed respondent "what appeared to be U.S. currency." Respondent "received" the money in his left hand.

Burns knew that the area was one of "very high narcotics activity, sales and use"; thus, he decided to "contact" respondent to obtain his name,

address, and date of birth for a field contact report. Burns notified his dispatcher by radio that he was going to conduct a "walking stop"; he then pulled his patrol car to the wrong side of the road and parked diagonally against the traffic about 10 feet behind the group. As Burns stepped out of his car, respondent began to walk away. Burns "asked [respondent] to stop." Although Burns could not recall the exact words he used, he said something like " 'Stop. Would you please stop.' " Respondent, who by this time was about five feet from Burns, stopped. As he did so, respondent "immediately" reached towards his left-rear pants pocket with his left hand. Burns feared respondent might "possibly have a weapon concealed in his pocket" and "reached out and grabbed his left forearm." At the time, respondent had "just his fingers" in his pocket. Burns withdrew respondent's hand from the pocket and saw a clear plastic bag tied with a red rubber band. Inside the bag was "a whitish-yellow powdery substance" which Burns believed might be cocaine. Burns asked respondent "what was inside the bag." Respondent replied, " 'I think its methamphetamine.' " Burns then arrested respondent on suspicion of possession of narcotics.

Based upon these facts, an information was filed charging respondent with possession of cocaine for sale. (Health & Saf. Code, § 11351.) Enhancements based upon seven prior convictions were also alleged.

In November 1989, respondent filed a motion to suppress evidence pursuant to Penal Code section 1538.5. Essentially respondent argued his initial detention was improper and that the search of his person could not be justified. After an evidentiary hearing, the trial court agreed, granted the suppression motion, and ordered the action against respondent dismissed. This timely appeal followed.

## II. Discussion

The People claim the trial court erred in granting the motion to suppress. They maintain Burns's initial contact with respondent was a consensual encounter and not a detention and, thus, was constitutionally permissible. The People also argue Burns was justified in seizing respondent's forearm because he suddenly reached for his back pocket. We will discuss the detention issue first.

■ For purposes of Fourth Amendment analysis, there are basically three levels of police contacts or interactions with individuals. First are "consensual encounters." They are police-individual interactions which result in no restraint of an individual's personal liberty whatsoever, i.e., no

seizure; and which may properly be initiated by police officers even if they lack any objective justification. (*In re James D.* (1987) 43 Cal.3d 903, 911 [239 Cal.Rptr. 663, 741 P.2d 161].) Second are "detentions." They are seizures of an individual which are strictly limited in duration, scope, and purpose, and which may be undertaken by the police if there is an articulable suspicion that a person has committed or is about to commit a crime. (*Ibid.*) Third are those seizures of an individual which exceed the permissible limits of detention, seizures which include formal arrests and restraints on an individual's liberty comparable to an arrest, and which are constitutionally permissible only if the police have probable cause to arrest the individual for a crime. (*Id.* at pp. 911-912.)

Our initial task is to determine whether the initial interaction between respondent and Burns was a consensual encounter or a temporary detention.

Law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, and asking him if he is willing to answer some questions. (*Florida* v. *Royer* (1983) 460 U.S. 491, 497 [75 L.Ed.2d 229, 236, 103 S.Ct. 1319].) A person has been " 'seized' " within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. (*United States* v. *Mendenhall* (1980) 446 U.S. 544, 554 [64 L.Ed.2d 497, 509, 100 S.Ct. 1870]; see also *INS* v. *Delgado* (1984) 466 U.S. 210, 215 [80 L.Ed.2d 247, 254-255, 104 S.Ct. 1758].) As the Supreme Court has noted, "The test is necessarily imprecise, because it is designed to assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation. Moreover, what constitutes a restraint on liberty prompting a person to conclude that he is not free to 'leave' will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs." (*Michigan* v. *Chesternut* (1988) 486 U.S. 567, 573 [100 L.Ed.2d 565, 572, 108 S.Ct. 1975].)

Here, respondent was standing on the sidewalk with two other men when he was suddenly confronted with a marked police car pulling across the street toward him. The car then parked diagonally against traffic a mere 10 feet away. When respondent began to leave, Officer Burns got out from the car and said something like, " 'Stop. Would you please stop.' " We believe the coercive effect of Burns's conduct was clear. A reasonable man does not believe he is free to leave when directed to stop by a police officer who has arrived suddenly and parked his car in such a way as to obstruct traffic. Clearly, appellant was detained.

The People dispute this conclusion relying principally on *People* v. *King* (1977) 72 Cal.App.3d 346 [139 Cal.Rptr. 926]. In *King*, the defendant was standing with several other people when he was approached by a police officer who knew him. When the defendant saw the officer he began to walk away. The officer then " 'called out to' " the defendant, saying " 'Danny, stop, I want to talk to you . . . .' " (*Id.* at p. 348.) The defendant continued to walk away and, as he did so, discarded several balloons containing heroin. The trial court concluded no detention had occurred and denied the defendant's motion to suppress. On appeal, the appellate court affirmed holding the officer's request to stop was sufficiently ambiguous, such that the trial court's conclusion no detention had occurred had to be affirmed if it was supported by substantial evidence. However, in so doing, the *King* court specifically noted that a conclusion the defendant had been detained would have been equally reasonable. (*Id.* at pp. 349-350.)

Here, unlike the situation presented in *King*, there is no indication that respondent and Burns were acquainted. Further, we construe Burns's conduct here to be much more coercive. The People's reliance on *King* does not compel a different result.

■ Having concluded respondent was detained by Burns, we must now determine whether that detention was justified. In order to justify an investigative stop or detention in a case such as this, the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to a crime has taken place, is occurring, or is about to occur; and (2) the person he intends to stop or detain is involved in that activity. (*In re James D., supra,* 43 Cal.3d at p. 914.) Not only must he subjectively entertain such a suspicion, it must be objectively reasonable for him to do so. (*Ibid.*)

Here, Burns admitted at the suppression hearing that he had no "probable cause" interest in respondent. Even if he had, the mere fact that respondent received money from another person on the street in an area known for drug activity is insufficient justification for a detention. (Cf. *People* v. *Bower* (1979) 24 Cal.3d 638, 645 [156 Cal.Rptr. 856, 597 P.2d 115].)

Since the respondent's detention was illegal, the evidence obtained as a result of that detention was properly suppressed. Having reached this conclusion, we need not address the People's further argument: that Burns's search of respondent was justified.

## III.   DISPOSITION

The judgment is affirmed.

Smith, Acting P. J., and Benson, J., concurred.