[No. A056615. First Dist., Div. Four. Sept. 24, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
LAMAR MIMS, Defendant and Appellant.

COUNSEL

Charles H. James, Public Defender, and Jeffrey C. Bradley, Assistant Public Defender, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver and Bruce Ortega, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**REARDON, J.**—Appellant Lamar Mims was convicted on his plea of guilty of possessing rock cocaine for sale and was admitted to probation. He appeals the superior court's denial of his motion to suppress evidence. (See Pen. Code, § 1538.5, subd. (m).) We affirm.

## I. FACTS

Approximately 5:30 p.m. on the evening of May 15, 1991, Officers Brooks and Garcia were patrolling in the 800 block of 9th Street in Richmond in a "semi marked patrol unit." Each officer was in full police uniform. Brooks observed two males in front of a residence at 824 9th Street, one of whom was the appellant.

Brooks saw appellant extend his left hand toward the extended hand of the other man, who held a piece of green paper that "appeared to be U.S. currency . . . ." As the officers approached within 20 to 25 yards, another male shouted "police." Immediately thereafter, appellant and the other male "pulled their hands apart and Mr. Mims [appellant] turned towards us." At that time, Brooks saw a plastic sandwich baggie in appellant's right hand, which appellant transferred to his left hand and then "put it in his left front pants pocket."

The buyer, i.e., the man with the green piece of paper in his hand, "ran westbound through the block along with the person who yelled police." Appellant walked up to the porch of the residence at 824 9th Street and knocked on the door. As the officers approached appellant on the porch, the front door opened and a female appeared. Officer Brooks asked the female if appellant lived at the residence, to which she replied "no."

Brooks then patted the front pants pocket of appellant and "felt several chunky materials, small." Brooks withdrew from that pants pocket "a sandwich baggie that contained twelve Ziploc baggies each containing an off-white rocky type substance." Appellant was arrested and the substance was determined to be rock cocaine.

It was stipulated that Brooks was an expert in the area of possession for sale of rock or base cocaine. He testified that based upon his observations he believed that appellant was in possession of rock cocaine. He also testified that the 800 block was an area having a "high level of narcotic traffic" where he had witnessed "street level narcotic transactions." Brooks further testified that he had participated in the service of two search warrants on the residence at 824 9th Street, and that on each occasion rock cocaine was found in the residence. Finally, Brooks testified that in his experience it was common for street level dealers to use lookouts to warn of the approach of police, and equally common for a dealer, upon police approach, to knock on the door of the nearest residence "to act like they live there [so that] the police will just drive by."

Appellant contends that the search of his pocket was unreasonable because Brooks lacked probable cause to arrest. He defines the search as including both the patdown of the pocket and entry into the pocket, and argues that the search cannot be justified as incident to an arrest because probable cause was absent. We conclude that the facts support a finding of probable cause.[1]

## II. Discussion

Probable cause has been generally defined as a state of facts that would lead a reasonable officer of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that a crime had been or was being committed. (*People* v. *Ingle* (1960) 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577]; see *Beck* v. *Ohio* (1964) 379 U.S. 89, 91 [13 L.Ed.2d 142, 145, 85 S.Ct. 223].) The question to be answered, then, is whether the facts as observed by Brooks, combined with his experience and knowledge of the area, would lead a reasonable person to believe that a drug transaction was in progress. An examination of the uncontroverted evidence compels an affirmative response.

---

[1] In light of this conclusion, we deem it unnecessary to address the alternate theory advanced by the People for the first time on appeal that there was a reasonable detention justifying a patsearch that ultimately led to the discovery of the contraband. (See *Terry* v. *Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868]; *In re Tony C.* (1978) 21 Cal.3d 888 [148 Cal.Rptr. 366, 582 P.2d 957].) We do observe that Brooks never testified that he was concerned for his safety nor did he attempt to justify the patdown of appellant's pocket on the basis of officer safety. On the contrary, his testimony was that he believed, based on his observations, that he would find cocaine inside the pocket.

## A. Knowledge and Experience of Officer

■ "The specialized knowledge of a police officer experienced in police narcotics work may render suspicious what would appear innocent to a layman." (*People* v. *Maltz* (1971) 14 Cal.App.3d 381, 390 [92 Cal.Rptr. 216].) It was stipulated that Brooks was an expert in the area of possession of rock cocaine for sale, and it was also established that he had previously witnessed street level transactions of the type at issue here. Although the public's exposure to and observations of drug dealing on our streets tends to render this factor of police expertise of lesser importance in current times, it nonetheless is an appropriate factor for consideration.

## B. Area With High Frequency of Drug Activity

■ The significance of this factor was well stated in *People* v. *Holloway* (1985) 176 Cal.App.3d 150 [221 Cal.Rptr. 394]: "It is true, unfortunately, that today it may be fairly said that our entire nation is a high crime area where narcotic activity is prevalent. Therefore, such factors, standing alone, are not sufficient to justify interference with an otherwise innocent-appearing citizen. [Citing *People* v. *Aldridge* (1984) 35 Cal.3d 473 [198 Cal.Rptr. 538, 674 P.2d 240] and *People* v. *Bower* (1979) 24 Cal.3d 638 [156 Cal.Rptr. 856, 597 P.2d 115], relied upon appellant herein.] Nevertheless, it would be the height of naivete not to recognize that the frequency and intensity of these sorry conditions are greater in certain quarters than in others. Consequently, we must allow those we hire to maintain our peace as well as to apprehend criminals after the fact, to give appropriate consideration to their surroundings and to draw rational inferences therefrom, unless we are prepared to insist that they cease to exercise their senses and their reasoning abilities the moment they venture forth on patrol." (*Id.*, at p. 155.)

Here, Brooks had previously observed street level drug transactions on the same block that appellant was arrested and had successfully executed two search warrants for drugs on the residence in front of which appellant was standing and to which appellant retreated upon the approach by police. Clearly, Brooks was entitled to buttress his observations and rely upon his personal knowledge that this was "an area of high drug activity . . . ." (*People* v. *Nonnette* (1990) 221 Cal.App.3d 659, 668 [271 Cal.Rptr. 329].)

## C. The Observed Transaction

Brooks observed an exchange, or attempted exchange, of what appeared to be currency for a plastic baggie. Appellant contends, relying primarily upon *Remers* v. *Superior Court* (1970) 2 Cal.3d 659 [87 Cal.Rptr. 202, 470 P.2d

11] and *Cunha* v. *Superior Court* (1970) 2 Cal.3d 352 [85 Cal.Rptr. 160, 466 P.2d 704], that this observation was insufficient to establish probable cause. If we limited our inquiry to this isolated fact, arguably *Remers* and *Cunha* would apply. (See also *People* v. *Huntsman* (1984) 152 Cal.App.3d 1073 [200 Cal.Rptr. 89]; *Filitti* v. *Superior Court* (1972) 23 Cal.App.3d 930 [100 Cal.Rptr. 583].) But here, we have much more.

## D. *Consciousness of Guilt*

The act that interrupted the transaction was the shout of "police" by the third male. Following the shout, the man with the currency and the appellant separated their extended arms. As appellant turned toward the police, he was observed to transfer the plastic baggie from his right to left hand, and then place the baggie inside his left front pants pocket. The man with the currency fled with the person who had shouted "police." Appellant walked to the porch of a residence in which he did not reside, and knocked on the door.

■ An inference that an individual is engaging or has just engaged in criminal conduct may be drawn where that individual, knowing that police are approaching, flees or engages in other activity indicative of an effort to avoid apprehension or police contact. (See *People* v. *Huntsman, supra,* 152 Cal.App.3d at p. 1090.) In this case, the inference is compelling. Based upon the facts presented, Brooks could reasonably conclude: (1) that the shout of "police" was a warning to appellant and his purchaser that the police had arrived; (2) that the buyer and appellant aborted the drug transaction because of the police arrival; (3) that the flight of the lookout and buyer confirmed this fact; (4) that appellant concealed the plastic bag because it contained contraband; and (5) that appellant chose as a method of avoiding apprehension the pretense of being a resident at 824 9th Street. In our view, the inference of an interrupted drug transaction is sufficiently compelling as to overcome any inadequacy flowing from Brooks's inability to specifically observe the contents of the plastic bag.

Appellant cites numerous authorities involving drug transactions where probable cause was found to be absent (see for example, *People* v. *Holt* (1989) 212 Cal.App.3d 1200 [261 Cal.Rptr. 89]; *People* v. *Valdez* (1987) 196 Cal.App.3d 799 [242 Cal.Rptr. 142]; *People* v. *Huntsman, supra,* 152 Cal.App.3d 1073; *People* v. *Knisely* (1976) 64 Cal.App.3d 110 [134 Cal.Rptr. 269]; *Filitti* v. *Superior Court, supra,* 23 Cal.App.3d 930), but in none of the cited cases were the facts establishing consciousness of guilt clear and compelling, as here.

Appellant discusses in some detail the case of *People* v. *Jones* (1991) 228 Cal.App.3d 519 [279 Cal.Rptr. 56], an opinion from Division Two of this

district. In *Jones*, the court concluded that "the mere fact that respondent received money from another person on the street in an area known for drug activity is insufficient justification for a detention. [Citation.]" (*Id.*, at p. 524.) Appellant argues that since the court in *Jones* found the facts insufficient to warrant a detention, a finding of probable cause cannot be made on the facts presented here. We are unpersuaded by this argument because our facts are substantially and significantly different than those presented in *Jones*. Significantly, in *Jones*, there was no exchange of money for suspected drugs, but simply the receipt of money by the defendant. Even more significant, in *Jones*, unlike here, there was no lookout, no warning, no flight, and no subterfuge.

"There is no exact formula for the determination of reasonableness. Each case must be decided on its own facts and circumstances." (*People* v. *Ingle*, *supra*, 53 Cal.2d at p. 412.) It is the totality of the circumstances confronting the officer that must be assessed. (*Cleaver* v. *Superior Court* (1979) 24 Cal.3d 297, 307 [155 Cal.Rptr. 559, 594 P.2d 984].) Here, Brooks, an experienced narcotics officer, sees an attempted exchange of money for a plastic bag in an area known to him for street drug transactions. He is in full police uniform and hears a third person shout "police." He knows that it is common practice for street level dealers to use lookouts to warn of police presence. Following the shout, he sees the person with the cash and appellant break off the exchange. He sees appellant place the plastic bag inside a pants pocket and sees the lookout and the man with the cash run down the block. Appellant turns away from the police, goes to the porch of a residence, and knocks on the door. When a person from within the residence responds, Brooks learns that appellant does not reside there. Brooks knows that street dealers, when approached by police, frequently feign innocent activity through the pretense of residing in the neighborhood.

Based on the totality of circumstances confronting Brooks, one wonders what activity appellant was engaged in, other than an attempted drug deal. Appellant suggests none. As stated by the court in *People* v. *Garrett* (1972) 29 Cal.App.3d 535 [104 Cal.Rptr. 829], a case with facts similar to our own: "It is difficult to imagine what further visual evidence of a street sale of narcotics could be required to establish reasonable cause for an arrest, for here the officer observed each element in the sale carried out before his eyes." (*Id.*, at p. 539.) Here, Brooks observed all the elements of an attempted drug deal and those observations were further supported and buttressed by the warning, the flight, the concealment, and the subterfuge.

We conclude that the facts confronting Brooks would lead a person of ordinary care and prudence to believe, or to entertain a strong suspicion, that

appellant possessed drugs in his pocket as a result of the interrupted drug transaction, and the fact that the search preceded the formal arrest is of no consequence. (See *People* v. *Simon* (1955) 45 Cal.2d 645, 648 [290 P.2d 531].) The motion to suppress was properly denied.

### III. CONCLUSION

Judgment affirmed.

Anderson, P. J., and Perley, J., concurred.