Filed 4/10/14  In re J.B. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re J.B., a Person Coming Under the Juvenile Court Law. | C074671 |
| THE PEOPLE,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>J.B.,<br><br>        Defendant and Respondent. | (Super. Ct. No. 69800) |

While a Manteca police officer was on patrol, he observed minor J.B. cut in front of the patrol car on his bicycle while clutching something under his jacket.  The officer asked the minor if he had a beer and the minor said yes.  The officer asked if he could have the beer, but the minor looked nervous and continued to clench the item in his jacket.  The officer then asked the minor if he had a gun; the minor said something that

1

sounded like "yeah" and began to turn his body, at which point the officer saw what appeared to be the handle of a firearm. The officer grabbed the firearm and ordered the minor down to the ground.

The San Joaquin County District Attorney filed a juvenile wardship petition asserting four counts: minor in possession of a firearm (Pen. Code, § 29610 -- count 1),[1] minor in possession of ammunition (§ 29650 -- count 2), carrying a loaded firearm in public (§ 25850, subd. (a) -- count 3), and carrying a concealed firearm (§ 25400, subd. (a)(2) -- count 4).

The minor moved to suppress evidence (Welf. & Inst. Code, § 700.1), asserting that he was detained without reasonable suspicion or probable cause while lawfully riding his bicycle on a public street. The juvenile court granted the motion to suppress evidence and dismissed the juvenile wardship petition.

The People appeal, claiming the juvenile court erred in granting the motion to suppress evidence. The People argue the initial contact between the officer and the minor was consensual; the officer had reasonable suspicion to detain the minor once the minor said he had a beer; and the officer lawfully searched the minor incident to arrest after the minor admitted possessing a firearm and the officer saw the grip of the firearm.

We agree with the People, and we will reverse the judgment.

BACKGROUND

At the hearing on the motion to suppress evidence, Manteca Police Officer Jeffrey Hooten testified as follows on direct examination:

Officer Hooten was on patrol on March 20, 2013, in full uniform and driving a marked police car, when he observed the minor riding a bicycle around 7:15 p.m.

---

[1] Undesignated statutory references are to the Penal Code.

Officer Hooten saw the minor "kind of cut across the street" in front of him.[2]  Officer Hooten made a right turn and saw the minor holding something with his left hand as he rode.  Pulling up alongside the minor, Officer Hooten saw that the minor was wearing a jacket and "clenching, carrying, holding" an object which "didn't look . . . real small."

While the minor was three to four feet from the passenger side of the police car, Officer Hooten said through the open passenger side window in a "normal" tone of voice: "What do you have in your jacket?"  He did not indicate that the minor had to stop.  He asked the question once or twice.  He also asked if the minor was holding a beer.  At one point the minor said yes.  Officer Hooten knew from prior contacts with the minor and his family that the minor was much younger than 21 and had no reason to be carrying alcohol.

The minor and Officer Hooten started to slow down, and the minor finally came to a stop.  After pulling forward a few feet and stopping in the middle of the road, Officer Hooten got out of his patrol car, walked toward the minor, and asked:  "[C]an I see the beer?  Can I have the beer?"  Although Officer Hooten repeated the questions, the minor said nothing, "just looked at me kind of with a nervous look on his face, still clenching whatever he had in his jacket."

Because of that behavior, Officer Hooten thought the minor might have something more serious than a beer on his person.  Officer Hooten asked in a "curiosity tone of voice":  "[D]o you have a gun on you?"  After Officer Hooten asked this question again, the minor almost inaudibly said something that sounded like "yeah."  Still on the bicycle with his hand clenching an object in his jacket, the minor started to turn his body.  Officer Hooten saw what appeared to be the wood-colored handle of a firearm, exactly where the

---

[2]  The People did not assert in the juvenile court, and the Attorney General does not assert on appeal, that this observation gave Officer Hooten a reasonable suspicion that the minor had violated the Vehicle Code.  Therefore, we do not consider that question.

minor was "clenching." Officer Hooten quickly pulled out his duty weapon, pointed it at the minor, and ordered him to put his hands up; the minor complied. Officer Hooten could see the firearm inside the jacket starting to slip as the minor wobbled on his bicycle. Moving around to the other side of the minor, Officer Hooten grabbed the firearm and ordered the minor to get down on the ground with his arms out.

On cross-examination, Officer Hooten testified:

Officer Hooten knew the minor by name. He had 10 or more previous contacts with the minor and the minor's family. Officer Hooten's first contact with the minor was approximately three years earlier; Officer Hooten could not remember the specific date. He sometimes contacted the minor's family at their residence in response to a neighbor's noise complaints.

In addition, Officer Hooten had contacted the minor at locations other than the family residence, but Officer Hooten could not recall whether he had previously detained the minor. He also could not recall whether he had previously searched the minor, found contraband on him, or written a report regarding a prior contact with the minor.

When the minor's counsel started to ask again about prior contacts at the minor's residence, the juvenile court intervened: "You know, let's face it folks, the bottom line is what happened on March 20th, was there probable cause for the search. . . . [¶] . . . [¶] But if that probable cause was based upon prior contacts -- [¶] . . . [¶] . . . that bothers me. I'll be honest with you." Addressing the minor's counsel, the juvenile court continued: "Because if the stop was made with prior contacts, I think you're on the right track. But you don't have to beat it to death."

After the prosecutor and the minor's counsel rested, the juvenile court asked Officer Hooten: "Let supposing [*sic*] that same night it was a kid you've never seen before, never knew him from Adam, and you saw something in his jacket [as he was] riding a bicycle, would you [have] done the same thing as you did with [the minor]?" Officer Hooten answered: "Yes." The juvenile court followed up: "Every kid riding a

4

bicycle that had something under his jacket, you would stop and talk to him?" Officer Hooten answered: "Not so much that. I think it's the time and the place, and he's riding. He was right there. I was just patrolling the area."

The juvenile court stated: "But you have to have probable cause to stop somebody and search them. That's my issue. And I haven't heard any illegal contact [*sic*]. And I'm having a hard time here." Officer Hooten replied: "The initial -- we didn't get far in the whole proceeding here, but the initial contact I pulled -- I was driving down the street. I seen [*sic*] him from a little bit of a distance. He went across the street and/or he went southbound across my lanes of traffic, I guess you could say. And I turned the corner. I could see he's holding something under his jacket. I pulled up next to him and I started talking to him. That was it.

"I said, 'What do you got? You got a beer?

"At one point he tells me yes.

"Well, at that point in time he had already slowed down and stopped. So I pulled forward a little bit, obviously for officer safety reasons. I didn't want him directly in my line of sight, I guess you could say. He's stopped. I pulled forward a little bit, and I stopped. I got out and contacted him. I mean, he's acting really nervous. I didn't tell him to stop at any point. I didn't use any of my lighting equipment. It wasn't dark outside. He stopped on his own. And I got out and I started talking to him.

"And after him being nervous and still clenching something under his jacket, I asked him if he had a gun. Obviously in just about every officer's mind, everybody has a gun. I ask a lot of people a lot of questions."

The juvenile court granted the motion to suppress evidence and subsequently dismissed the juvenile wardship petition.

## DISCUSSION

The People contend the juvenile court erred in granting the motion to suppress evidence. The People argue (A) the initial contact between the officer and the minor was

5

consensual; (B) the officer had reasonable suspicion to detain the minor once the minor said he had a beer; and (C) the officer lawfully searched the minor incident to arrest after the minor admitted possessing a firearm and the officer saw the grip of the firearm.

The minor responds that the initial contact was a detention that was not based on reasonable suspicion; the officer did not have reasonable suspicion to detain the minor for possession of alcohol; and the evidence was properly suppressed because it was the fruit of the unlawful detention.

In reviewing a ruling on a motion to suppress evidence, we defer to the trial court's factual findings if supported by substantial evidence, but exercise our independent judgment as to whether the search or seizure was constitutionally reasonable. (*People v. Glaser* (1995) 11 Cal.4th 354, 362 (*Glaser*).)

The juvenile court did not make express factual findings to support its ruling. And although the juvenile court expressed concern at the hearing that Officer Hooten contacted the minor solely because the officer knew him from prior contacts, substantial evidence does not support such a finding. Officer Hooten explained why he contacted the minor based on the conduct the officer observed at that moment, and testified he would have done so even if the minor had been unknown to him. The juvenile court cited no evidence discrediting the officer's story, and we see none.

In the absence of factual findings, we review the matter independently based on the undisputed evidence. We conclude that the contact between Officer Hooten and the minor began as a consensual encounter for which the officer did not need any objective justification (*People v. Hughes* (2002) 27 Cal.4th 287, 327), and that the minor's claim he possessed alcohol gave the officer reasonable suspicion of wrongdoing, objectively justifying the ensuing investigative detention. Once the minor said he had a gun and the officer saw the gun grip, the officer could lawfully search the minor incident to arrest. A search incident to arrest can precede the arrest if an arrest is justified at the time of the search. (*People v. Gonzales* (1989) 216 Cal.App.3d 1185, 1189.)

6

A

The People argue the initial contact between the officer and the minor was consensual. "Consensual encounters do not trigger Fourth Amendment scrutiny. [Citation.] Unlike detentions, they require no articulable suspicion that the person has committed or is about to commit a crime. [Citation.] [¶] The United States Supreme Court has made it clear that a detention does not occur when a police officer merely approaches an individual on the street and asks a few questions. [Citation.] As long as a reasonable person would feel free to disregard the police and go about his or her business, the encounter is consensual and no reasonable suspicion is required on the part of the officer. Only when the officer, by means of physical force or show of authority, in some manner restrains the individual's liberty, does a seizure occur. [Citations.] '[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.' [Citation.] This test assesses the coercive effect of police conduct as a whole, rather than emphasizing particular details of that conduct in isolation. [Citation.] Circumstances establishing a seizure might include any of the following: the presence of several officers, an officer's display of a weapon, some physical touching of the person, or the use of language or of a tone of voice indicating that compliance with the officer's request might be compelled." (*In re Manuel G.* (1997) 16 Cal.4th 805, 821 (*Manuel G.*).)

"The test for the existence of a show of authority is an objective one and does not take into account the perceptions of the particular person involved. ([*Manuel G.*]*, supra*, 16 Cal.4th at p. 821.) The test is 'not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person.' (*California v. Hodari D.* (1991) 499 U.S. 621, 628 [113 L.Ed.2d 690].)" (*People v. Garry* (2007) 156 Cal.App.4th 1100, 1106 (*Garry*).)

Officer Hooten questioned the minor as he drove alone alongside the minor's bicycle; the passenger side of his patrol car was three or four feet from the minor. At that point the officer did not display a weapon, touch the minor, turn on his lights, order the minor to stop, or use language or a tone of voice indicating coercion. Before the minor said he was carrying a beer, which materially changed the situation, there is no evidence that he could not simply have ridden away rather than answer the officer's questions. All indicia point to a consensual encounter, not to a show of authority by the officer. (*Manuel G., supra*, 16 Cal.4th at p. 821.)

The minor asserts that he would not have felt free to leave because he was 14 years old, but he makes no further argument and cites no authority or evidence to support this assertion. We do not consider legal propositions unsupported by argument or authority. (*Quail Lakes Owners Assn. v. Kozina* (2012) 204 Cal.App.4th 1132, 1137.)

The minor asserts that, after he stopped, Officer Hooten made a show of authority by pulling his car in front of the minor's bicycle. But what happened after the minor stopped is irrelevant to whether he was coerced into stopping in the first place. And by the time he stopped, he had already said he was carrying a beer, which gave the officer reasonable suspicion to detain him.

The minor relies on *People v. Jones* (1991) 228 Cal.App.3d 519 (*Jones*), *People v. Wilkins* (1986) 186 Cal.App.3d 804 (*Wilkins*), and *Garry, supra*, 156 Cal.App.4th 1100, to show that the encounter here was not consensual. But those cases are distinguishable. In *Jones,* an officer ordered the defendant to stop when he started to leave. (*Jones, supra*, 228 Cal.App.3d at p. 523.) In *Wilkins*, an officer stopped his marked patrol car behind the suspects' car in a parking lot, preventing them from driving away. (*Wilkins, supra*, 186 Cal.App.3d at pp. 807, 809.) In *Garry*, a uniformed officer illuminated the defendant with the patrol car's spotlight and walked " 'briskly' " toward the defendant to question him. (*Garry, supra,* 156 Cal.App.4th at pp. 1103-1104, 1111-1112.) Here, however, during the initial conversation before the minor said he had a beer, there is no evidence

8

that Officer Hooten ordered the minor to stop, blocked him with the patrol car, illuminated him with a spotlight or walked briskly toward him.

B

The People further argue the officer had reasonable suspicion to detain the minor once the minor said he had a beer.

An officer may perform a brief investigative detention based on reasonable suspicion of wrongdoing; probable cause to believe that a crime has occurred or is occurring is not needed.[3] " 'A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity.'  [Citation.]" (*People v. Hernandez* (2008) 45 Cal.4th 295, 299.)  Even if the circumstances observed by the officer might have an innocent explanation, they may still give rise to a reasonable suspicion which entitles the officer to perform an investigative detention.  (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 146; *Glaser*, *supra*, 11 Cal.4th at p. 373; *People v. Souza* (1994) 9 Cal.4th 224, 242.)

It is a misdemeanor for a person under the age of 21 to possess alcohol "on any street or highway or in any public place." (Bus. & Prof. Code, § 25662, subd. (a).)  The minor claimed he possessed alcohol on a public street.  Officer Hooten felt certain the minor was under 21 based on their prior contacts, but the officer did not need such certainty to justify a detention under the circumstances.  It is a matter of common knowledge that most 14-year-old boys do not look like adults, and no evidence suggests

---

[3] The juvenile court's statement "you have to have probable cause to stop somebody and search them" overlooked both the consensual encounter doctrine and the reasonable suspicion standard for investigative detentions.  Therefore, we disagree with the minor's assertion that "[n]othing in this record suggests, let alone demonstrates, that the juvenile court failed to apply the applicable legal standards."

that the minor in this case did so. Thus, even if the officer had not known or reasonably believed the minor was under 21 based on their prior contacts, the officer could have formed a reasonable suspicion of wrongdoing from the minor's appearance and admission, taken together. No more was needed to justify detaining the minor to investigate the matter.

The minor asserts to the contrary: "Officer Hooten's detention of [the minor] was not based on objectively reasonable suspicion that [the minor] was committing a crime." However, his lengthy discussion under this heading does not mention his claim that he was carrying a beer, the statement that triggered his actual detention. Rather, he continues to mischaracterize the consensual encounter that preceded his statement as a detention, and to assert that he was "stopped" from the moment the officer began to question him while driving alongside him.

The minor then asserts: "Officer Hooten did not have reasonable suspicion to detain [the minor] for being a minor in possession of alcohol." However, the minor's brief argument under this heading again fails to mention that he answered affirmatively when the officer asked if he was carrying a beer. The officer did not need to have reasonable suspicion that the minor was in possession of alcohol in order to ask him about it because the encounter up to that time was consensual. It was the minor's answer to the question that created the reasonable suspicion needed to detain him.

C

In addition, the People argue that the officer lawfully searched the minor incident to arrest after the minor admitted possessing a firearm and the officer saw the grip of the firearm. The minor does not respond to this argument, other than by asserting that the evidence must be suppressed as the fruit of an unlawful detention. Because the minor's detention was not unlawful, we reject the minor's assertion and agree with the People.

10

## DISPOSITION

The judgment is reversed. The matter is remanded to the juvenile court with directions to vacate the order granting the minor's motion to suppress evidence and to enter a new order denying the motion.

                                                                                  MAURO                , J.

We concur:

_____RAYE_____, P. J.

_____HULL_____, J.

11