Filed 10/20/15  P. v. Mixon CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H041097 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1350518) |
| v. | |
| SEQUOIA S. MIXON, | |
| Defendant and Appellant. | |

## I.  INTRODUCTION

After her motion to suppress was denied, defendant Sequoia S. Mixon was convicted by jury of bringing a controlled substance into jail (Pen. Code, § 4573)[1] and possessing a controlled substance (Health & Saf. Code, § 11377, subd. (a)).  The trial court suspended imposition of sentence and placed defendant on probation.

On appeal, defendant contends that the trial court erred by denying her motion to suppress evidence because she was detained without reasonable suspicion of criminal activity.  For reasons that we will explain, we will affirm the order of probation and order the correction of a clerical error in the sentencing minutes.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  *Evidence at the Motion to Suppress*

San Jose Police Officer Jonathan Valverde testified about defendant's arrest and as an expert in prostitution and solicitation.  In December 2012, around 11:30 p.m., Officer Valverde was driving a patrol car by himself when he looked to his left and saw three or four people standing at the corner of two streets.  The area was dark without many street lights and the officer could not determine who the people were.  The area included a lot of hotels and was known for prostitution.  The officer had previously been assigned to a prostitution suppression unit for several hours on approximately six or seven occasions, and he had assisted in arrests for prostitution, or solicitation for prostitution, within a block of the area.  At the particular corner where the people were standing, there was a used car dealership that was closed and a hotel.  Within a half mile of the area there were Wendy's and Denny's restaurants that were open, and a liquor store that might have been open.

The officer made a U-turn and drove back towards the corner, but the people had proceeded down another street.  The officer drove down that street and saw the people on the sidewalk.  He parked his car near them, approximately a car length from the sidewalk and in the opposite direction of traffic.  The officer's car would have blocked oncoming traffic "[i]f there was some."  The officer did not block the path of the people, nor did he activate any emergency lights.  He used one spotlight on his car to illuminate the area and to get a better view of the individuals' hands.  The spotlight was not shining directly in the individuals' faces.

Upon parking his vehicle, the officer observed that the group consisted of three women, including defendant.  The officer exited his vehicle and "casually walk[ed] over to them."  The officer was wearing a uniform and a utility belt that had a firearm, handcuffs, and a Taser.  He did not have any weapons out.

2

The weather was cold that night. The officer observed that the women were wearing "really revealing" clothes. Defendant was wearing really tight short shorts, a bra, a blouse that did not cover her whole upper body, fishnets, and a small jacket.

The officer did not see defendant or the other two women soliciting customers. He "tr[ied] to engage in a conversation with them" and asked them what they were doing. At the time, defendant and one of the other women were walking away while the third woman was "kind of facing" the officer. Defendant turned around after a few steps. The women told the officer that they were just walking.

As the officer engaged the women in conversation, the officer was calm and used a monotone voice. He did not give any orders to the women or make any demands. The women were talkative, open, and very cooperative. The officer asked if they had been arrested before and specifically asked if they had been arrested for prostitution. The women acknowledged that they had previously been arrested for prostitution. The officer asked whether anyone had an outstanding warrant and they all responded in the negative. The officer then asked for identification, but not all of the women had identification.

The officer contacted police dispatch for a records search. He learned that defendant had two outstanding warrants. The officer subsequently arrested defendant for the warrants. While defendant was being arrested, a police sergeant arrived. The incident, from the time Officer Valverde encountered the women to the time he confirmed there was a bench warrant for defendant, lasted approximately 13 minutes. Officer Valverde ultimately seized drugs from defendant.

**B.** *Charges*

Defendant was charged by information with bringing a controlled substance into jail (§ 4573; count 1) and possessing a controlled substance (Health & Saf. Code, § 11377, subd. (a); count 2).

3

**C.** *Suppression Motion*

Defendant filed a motion to suppress "evidence and observations and fruits thereof obtained as a result of her illegal search and/or seizure and arrest" on the grounds that her Fourth Amendment rights were violated when the police acted without a warrant in December 2012. The prosecution filed opposition to the motion, arguing that the officer's encounter was consensual and that, even if it was not, the officer had reasonable suspicion to detain defendant to investigate whether she was loitering with the intent to commit prostitution (§ 653.22). The prosecution further argued that the arrest was justified because defendant had two outstanding arrest warrants.

At the hearing on the motion, defendant argued that a detention occurred prior to her arrest because a reasonable person would not believe that he or she was free to leave. Defendant referred to the officer parking close to her and obstructing traffic, the officer's use of a spotlight, the officer being armed, the officer posing questions regarding her legal status and identification, and another officer arriving on scene. Defendant further argued that the officer did not have reasonable suspicion to detain her based solely on her appearance and the fact that she was in an area known for prostitution. Defendant argued that the officer never saw her or the other women soliciting customers.

The prosecution argued that the encounter was consensual. According to the prosecution, the officer approached defendant and the other two women without haste and spoke calmly. Defendant chose to walk back and talk to the officer. Further, the women's response that they were just walking "did not make sense" based on where the women were standing and the businesses that were closed in the area. The prosecution also argued that there was reasonable suspicion that defendant was loitering with the intent to commit prostitution. (§ 653.22.) According to the prosecution, defendant was "scantily clad" on a cold night in an area known for prostitution where few businesses were open. Defendant was also walking in a direction away from any of the open businesses, such as the hotel, liquor store, and restaurants.

4

The trial court denied the motion to suppress. The court found that the encounter was consensual up to the point of the arrest. The court explained: "The officer approached. There's no evidence that he used the authority or color of authority to [rise] to the level of a detention here. No voice was raised. No weapons were drawn. It's a casual approach, a casual tone of voice." The court further stated that "the nature of the conversation" also did not indicate a detention. The court observed that the warrant check led to the arrest.

The trial court further found that, even if the encounter was not consensual, there was a "reasonable articulable suspicion for a detention." The court explained that the officer had served on a prostitution suppression unit multiple times, had been involved in arrests within a block of the area, and thus was aware that the location was known for prostitution. In addition, it was late at night, defendant and the others were near an empty lot, and the nearby businesses were not open. Further, defendant's clothing on a cold night "contribute[d] to the articulable suspicion that loitering for prostitution [was] occurring."

## D. *Verdicts and Sentence*

After a trial, a jury found defendant guilty of bringing a controlled substance into jail (§ 4573; count 1) and possessing a controlled substance (Health & Saf. Code, § 11377, subd. (a); count 2). On May 30, 2014, the trial court suspended imposition of sentence and placed defendant on probation for three years with various terms and conditions, including an eight-month jail term, which was deemed satisfied. The court imposed various fines and fees, including a restitution fine of $240 (§ 1202.4, subd. (b)), an administrative fee of 10 percent (§ 1202.4, subd. (*l*)), and a suspended probation revocation restitution fine in the same amount as the restitution fine (§ 1202.44).[2]

---

[2] The minutes of the hearing do not reflect the imposition of the administrative fee of 10 percent on the restitution fine (§ 1202.4, subd. (*l*)), or the imposition of the (continued)

5

## III. DISCUSSION

Defendant contends the trial court erred by denying her motion to suppress. She argues that the officer's "manner of approach with his car" was coercive and that she was detained when the officer exited his patrol car. She further argues that, even if she was not detained at the point the officer exited his car, she was detained when the officer "disregarded her answer that she was just walking and began questioning her about her legal status." Defendant also contends that the officer did not have a reasonable suspicion that she was loitering with the intent to commit prostitution.

The Attorney General contends the encounter was consensual and that reasonable suspicion supported any detention.

### A. *Standard of Review*

"The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment." (*People v. Glaser* (1995) 11 Cal.4th 354, 362; accord, *People v. Brown* (2015) 61 Cal.4th 968, 975 (*Brown*).)

### B. *Analysis*

The Fourth Amendment prohibits unreasonable seizures. " 'A seizure occurs whenever a police officer "by means of physical force or show of authority" restrains the liberty of a person to walk away.' [Citations.]" (*People v. Celis* (2004) 33 Cal.4th 667, 673.)

"[A] detention does not occur when a police officer merely approaches an individual on the street and asks a few questions. [Citation.] As long as a reasonable

---

suspended probation revocation restitution fine (§ 1202.44). We will order the minutes corrected accordingly.

6

person would feel free to disregard the police and go about his or her business, the encounter is consensual and no reasonable suspicion is required on the part of the officer. Only when the officer, by means of physical force or show of authority, in some manner restrains the individual's liberty, does a seizure occur. [Citations.] '[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.' [Citation.] This test assesses the coercive effect of police conduct as a whole, rather than emphasizing particular details of that conduct in isolation. [Citation.] Circumstances establishing a seizure might include any of the following: the presence of several officers, an officer's display of a weapon, some physical touching of the person, or the use of language or of a tone of voice indicating that compliance with the officer's request might be compelled. [Citations.]" (*In re Manuel G.* (1997) 16 Cal.4th 805, 821 (*Manuel G.*).)

"The officer's uncommunicated state of mind and the individual citizen's subjective belief are irrelevant in assessing whether a seizure triggering Fourth Amendment scrutiny has occurred. [Citation.]" (*Manuel G.*, *supra*, 16 Cal.4th at p. 821.) "The test is 'not whether the citizen perceived that he [or she] was being ordered to restrict his [or her] movement, but whether the officer's words and actions would have conveyed that to a reasonable person.' [Citation.]" (*People v. Garry* (2007) 156 Cal.App.4th 1100, 1106 (*Garry*).) The courts have placed "great significance on how the officers physically approached their subjects," as well as considered the officer's words and verbal tones. (*Id.* at p. 1110.) "Furthermore, while cases have not found the use of a spotlight alone to constitute a detention [citations], they also indicate its use should be considered in determining whether there was a show of authority sufficient to establish one occurred. [Citations.]" (*Id.* at p. 1111.)

The evidence regarding the circumstances of the encounter in this case was as follows. The officer observed three or four people at nighttime standing on a poorly lit corner in an area known for prostitution. The officer ultimately drove his patrol car to the area where defendant was located, parked his patrol car one car length away from the sidewalk, and shined his spotlight in the area where defendant and the other two women were walking or standing. He did not use his emergency lights, did not draw a weapon, and did not have another officer with him. As he "casually walk[ed] over to" the women, he made no verbal command or request. The officer did nothing to prevent defendant and the other women from leaving the area, and indeed defendant was walking away from the officer when the officer initially started talking to them. As the officer engaged defendant and her companions in conversation, he was calm and used a monotone voice. The officer observed that all three women were wearing "really revealing" clothing. Defendant in particular was wearing short shorts, a bra, a blouse that did not cover her whole upper body, fishnets, and a small jacket. The officer asked what they were doing, and the women responded that they were walking. During the ensuing conversation, the officer asked whether they had been arrested for prostitution, whether they had an outstanding warrant, and for identification. Defendant and her companions were talkative and cooperative with the officer. The officer did not give any order to the women or make any demand. Under the circumstances surrounding the encounter, we believe the officer's actions did not constitute a show of authority so intimidating as to communicate to any reasonable person that he or she was " 'not free to . . . terminate the encounter.' " (*Manuel G.*, *supra*, 16 Cal.4th at p. 821.)

Defendant contends that the officer's use of a spotlight, combined with his manner of driving and parking, and his exiting a patrol car in full uniform with a gun and Taser visible, "would signal to a reasonable person that she was not free to leave" at the time the officer exited his car.

8

As we stated above, the use of a spotlight alone does not turn a consensual encounter into a detention. (*Garry*, *supra*, 156 Cal.App.4th at p. 1111; *People v. Perez* (1989) 211 Cal.App.3d 1492, 1496 (*Perez*).) "While the use of high beams and spotlights might cause a reasonable person to feel himself [or herself] the object of official scrutiny, such directed scrutiny does not amount to a detention. [Citations.]" (*Perez*, *supra*, at p. 1496.) In this case, although the officer used a spotlight to illuminate the area, he ultimately approached the women on foot and in a casual manner, and he engaged in a conversation with them without giving any order or making any demand.

Parking a patrol car in a traffic lane, without more, also does not lead to a conclusion that a detention has occurred. In *People v. Jones* (1991) 228 Cal.App.3d 519, cited by defendant, the officer pulled his patrol car to the wrong side of the road, parked diagonally against the traffic, and directed the defendant, who was walking away, to stop. The appellate court found that the officer's conduct, taken as a whole, constituted a detention. (*Id.* at p. 523.) "A reasonable man does not believe he is free to leave when directed to stop by a police officer who has arrived suddenly and parked his car in such a way as to obstruct traffic." (*Ibid.*) In contrast, in the instant case the officer did not direct defendant to stop, nor did the he otherwise issue any verbal command as he attempted to engage defendant and the other women in a conversation.

Moreover, whether an officer is wearing a uniform and is visibly armed are factors that "have little weight in the analysis" for determining whether a seizure has occurred. (*United States v. Drayton* (2002) 536 U.S. 194, 204 (*Drayton*); accord, *People v. Zamudio* (2008) 43 Cal.4th 327, 346.) "Officers are often required to wear uniforms and in many circumstances this is cause for assurance, not discomfort. Much the same can be said for wearing sidearms. That most law enforcement officers are armed is a fact well known to the public. The presence of a holstered firearm thus is unlikely to contribute to the coerciveness of the encounter absent active brandishing of the weapon." (*Drayton*, *supra*, at pp. 204-205.)

9

Defendant further contends that a detention occurred at the point when the officer "disregarded her answer that she was just walking and began questioning her about her legal status." In making this contention, defendant primarily relies on *Garry*, *supra*, 156 Cal.App.4th 1100.

We are not persuaded by defendant's argument. "Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen. [Citations.] Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions[ and] ask for identification . . . provided they do not induce cooperation by coercive means. [Citation.] If a reasonable person would feel free to terminate the encounter, then he or she has not been seized." (*Drayton*, *supra*, 536 U.S. at pp. 200-201; accord, *Brown*, *supra*, 61 Cal.4th at p. 974.) "It is not the nature of the question or request made by the authorities, but rather the manner or mode in which it is put to the citizen that guides us in deciding whether compliance was voluntary or not." (*People v. Franklin* (1987) 192 Cal.App.3d 935, 941.)

In *Garry*, the police officer was in his patrol car in a "high-crime, high-drug area." (*Garry*, *supra*, 156 Cal.App.4th at p. 1103.) For a few seconds, the officer watched the defendant standing next to a parked car. (*Id.* at pp. 1103-1104.) After illuminating the defendant with the spotlight on the patrol car, the officer exited his vehicle and " 'briskly' walked 35 feet in 'two and a half, three seconds' directly to [the defendant] while questioning him" about whether he was on probation or parole, even though the defendant had indicated that he was merely standing outside his home. (*Id.* at p. 1111.)

The Court of Appeal determined that the police officer's actions "taken as a whole, would be very intimidating to any reasonable person." (*Garry*, *supra*, 156 Cal.App.4th at p. 1111.) The court believed that a detention had occurred even though the officer did not make any verbal commands. The court explained that "[n]o matter

10

how politely [the officer] may have stated his probation/parole question, any reasonable person who found himself in defendant's circumstances, suddenly illuminated by a police spotlight with a uniformed, armed officer rushing directly at him asking about his legal status, would believe themselves to be 'under compulsion of a direct command by the officer.' [Citation.] [The officer's] actions set an unmistakable 'tone,' albeit largely through nonverbal means, 'indicating that compliance with the officer's request might be compelled.' [Citation.]" (*Id.* at p. 1112.)

The record in this case reflects that the tone set by the officer during the encounter with defendant was much different than that set by the "aggressive" and "intimidating" actions of the officer in *Garry*. (*Garry*, *supra*, 156 Cal.App.4th at p. 1112.) In contrast to the officer in *Garry*, who "all but ran directly at" the defendant and "pointedly inquired" about the defendant's legal status (*id.* at pp. 1112, 1111), the record in the present case reflects that Officer Valverde "casually walk[ed] over" to defendant and her companions and calmly engaged them in conversation in a monotone voice. He asked what they were doing, about arrests and warrants, and for identification. Nothing in the record suggests that the officer used an authoritative tone, or that he engaged in any nonverbal coercive conduct in questioning defendant. "There was no application of force, no intimidating movement, no overwhelming show of force, no brandishing of weapons, no blocking of exits, no threat, no command, not even an authoritative tone of voice." (*Drayton*, *supra*, 536 U.S. at p. 204.) Where cooperation was not induced by coercive means, merely approaching a person and asking questions does not amount to an involuntary detention. (*Id.* at pp. 200-201; *Manuel G.*, *supra*, 16 Cal.4th at p. 821.)

In sum, after considering all the circumstances surrounding the encounter with defendant, we do not believe that the effect of the officer's conduct as a whole was coercive. (*Manual G.*, *supra*, 16 Cal.4th at p. 821.) We therefore conclude that the trial court properly denied defendant's motion to suppress based on a determination that the officer's encounter with defendant was consensual. In view of our conclusion, we do not

11

reach the issue of whether the officer had reasonable suspicion that defendant was loitering with the intent to commit prostitution.

## IV. DISPOSITION

The order of probation is affirmed. The minutes of the May 30, 2014 sentencing hearing are ordered corrected to reflect the trial court's imposition of a $24 administrative fee on the restitution fine (Pen. Code, § 1202.4, subd. (*l*)) and a $240 suspended probation revocation restitution fine (Pen. Code, § 1202.44).

_____

BAMATTRE-MANOUKIAN, ACTING P. J.

WE CONCUR:

_____

MIHARA, J.

_____

GROVER, J.

*People v. Mixon*
**H041097**