Filed 11/9/22  P. v. Truong CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JONATHAN TRUONG,<br><br>    Defendant and Appellant. | G060773<br><br>(Super. Ct. No. 19NF2484)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Steven D. Bromberg and Terri K. Flynn-Peister, Judges.  Affirmed.

Laura Vavakin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel, Teresa Torreblanca, and Britton B. Lacy, Deputy Attorneys General, for Plaintiff and Respondent.

Jonathan Truong appeals from a judgment after the jury convicted him of two counts of possessing drugs for sale. Truong argues the trial court erred by denying his motion to suppress evidence. We disagree and affirm the judgment.

FACTS

Late one night, Officer Billy Phu was on patrol when he saw Truong standing on a skateboard looking into a backpack. With his body-worn camera activated, Phu approached Truong and spoke with him. Phu asked Truong if he had any controlled substances. Truong answered, "I have some meth dude."

Phu handcuffed Truong and asked if he had anything else. Truong said he had heroin. Phu searched him and found bags containing 2.0 grams of methamphetamine and a bag containing 0.536 grams of heroin.

Truong consented to a search of his cell phone. Phu found messages he believed indicated a plan to sell controlled substances. Phu asked about the text messages. Truong admitted he was selling the methamphetamine and heroin to an individual in another state.

An information charged Truong with possession of methamphetamine for sale (Health & Saf. Code, § 11378; count 1) and possession of heroin for sale (Health & Saf. Code, § 11351; count 2). The information alleged he suffered three prior strike convictions (Pen. Code, §§ 667, subds. (d) & (e)(2)(A); 1170.12, subds. (b) & (c)(2)(A)) and served a prior prison term (Pen. Code, § 667.5, subd. (b)).

Truong filed a motion to suppress evidence. The prosecution filed opposition, and Truong filed a reply. The trial court denied the motion.

A jury convicted Truong of both counts. At a bifurcated bench trial, the trial court found the three strike priors true. At sentencing, the court struck the priors, sentenced Truong to jail with credit for time served, and placed him on two years of formal probation.

DISCUSSION

Truong contends the trial court erred by denying his motion to suppress evidence because it was not a consensual encounter. We disagree.

*A. Background*

Truong moved to suppress inter alia the drugs, the body-worn camera footage, and his statements because Phu unlawfully detained him. In its opposition, the prosecution argued the initial contact was consensual and the search was lawful because Truong was on probation, he consented, and Phu arrested him. In reply, Truong asserted the detention was unlawful.

At the hearing, Phu testified he was on patrol by himself around 10:48 p.m. when he saw Truong standing in the street between two parked vehicles. Phu stopped his marked patrol vehicle on the wrong side of the street behind Truong. Phu's vehicle did not block or trap Truong's path of travel, and Phu did not activate his siren or overhead lights. Phu did not brandish his weapon.

Phu, who was in uniform, approached Truong from behind. Truong was wearing a hooded sweatshirt with the hood over his head and "digging in a backpack." When Phu got out of his vehicle, he said, "Police department, man. What's goin' [*sic*] on?" Phu testified he identified himself to Truong for his own safety and Truong's safety because based on his training and experience the neighborhood was "a high-crime area and part of the territory of a known gang in Fullerton called Baker Street." Phu said, "Can you take your hands out of the bag for me?" Truong raised his hands in the air.

Phu asked Truong several questions, including the following: "What's your name dude?"; "Where you comin' from bro?"; and "Where do you live at?" When Phu asked if he was on probation, Truong responded, "[S]ummary probation."

Following a couple background questions, Phu asked, "Anything illegal on you at all?" Truong replied, "I have some meth dude." Phu asked whether he had

3

anything else and confirmed he was subject to a probation search. At some point a second officer arrived.

Phu asked him to take off his backpack and place his hands behind his back. When Phu asked whether he had anything else, Truong admitted he had heroin.

Phu searched Truong and recovered bags containing methamphetamine and heroin, and a cell phone. After Truong consented to Phu searching his phone, Phu found messages that were consistent with drug sales.

The trial court denied Truong's motion to suppress evidence concluding it was a consensual encounter. The court mused one day the Supreme Court would address the "significant issue" of whether it was consensual when the person refused to talk to the officer and walked away.[1] It added, "If I'm stopped by a police officer, I'm not going to feel safe to walk away and not say anything. . . . I have a right to walk away. [¶] [Truong] had a right to walk away." The court opined once Truong said he was on probation and had methamphetamine and heroin, "[i]t comes pretty easily" for Phu.

## B. *Law & Analysis*

"An officer may approach a person in a public place and ask if the person is willing to answer questions. If the person voluntarily answers, those responses, and the officer's observations, are admissible in a criminal prosecution. [Citations.] Such consensual encounters present no constitutional concerns and do not require justification. [Citation.] However, 'when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen,' the officer effects a seizure of that person, which must be justified under the Fourth Amendment to the United States Constitution. [Citations.] In situations involving a show of authority, a person is seized

---

[1] In the future, however, our Supreme Court may provide greater guidance on the concept of what constitutes a consensual encounter. But we are bound to follow that law as it currently exists.

4

'if "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave,"' or '"otherwise terminate the encounter,"' [citation], and if the person actually submits to the show of authority [citation]." (*People v. Brown* (2015) 61 Cal.4th 968, 974 (*Brown*).)

"Circumstances establishing a seizure might include any of the following: the presence of several officers, an officer's display of a weapon, some physical touching of the person, or the use of language or of a tone of voice indicating that compliance with the officer's request might be compelled. [Citations.] The officer's uncommunicated state of mind and the individual citizen's subjective belief are irrelevant in assessing whether a seizure triggering Fourth Amendment scrutiny has occurred. [Citation.]" (*In re Manuel G.* (1997) 16 Cal.4th 805, 821.) On review of denial of a suppression motion, we defer to the trial court's factual findings when supported by substantial evidence, but exercise independent judgment to determine whether, on the facts found, the search was reasonable under Fourth Amendment standards. (*Brown, supra,* 61 Cal.4th at p. 975.)

Here, the trial court properly denied Truong's motion to suppress evidence because it was a consensual encounter. We watched the body-worn camera footage. When Phu stopped his patrol vehicle, he did not restrict Truong's path of travel. Indeed, the body-worn camera footage shows Truong had ample room to walk away and continue on his path. (*People v. Franklin* (1987) 192 Cal.App.3d 935, 940 [officer parking behind pedestrian not a detention because did not block path].) At the outset, Phu was the only officer present, although another officer arrived after Truong admitted he was on probation and possessed methamphetamine. Phu neither brandished his weapon nor touched Truong until the time he handcuffed Truong. Contrary to Truong's claim, Phu's language and tone did not indicate he would compel compliance with his request. (*United States v. Drayton* (2002) 536 U.S. 194, 203-204 [finding there was no illegal search and seizure when police officer questioned defendant in a polite tone and did not

5

brandish a weapon or make intimidating movements].)  Phu's tone was casual and conversational.

Truong asserts Phu's command to take his hands out of his bag "amounted to an illegal detention."  The audio on this portion of the footage is difficult to decipher. Truong states there is an "almost inaudible 'can you'" before Phu told him to take his hands out of his bag.  Even if it was a command and not a request, it does not "automatically transform a consensual encounter into a detention."  (*In re Frank V.* (1991) 233 Cal.App.3d 1232, 1239 [merely asking suspect to take hands out of pockets not detention].)  Truong's subjective belief, including that he raised his hands, was irrelevant in determining whether this was a consensual encounter.

Truong makes much of the fact the trial judge mused that if an officer stopped him, he would not feel free to walk away and refuse to answer questions.  The trial judge's musings about a hypothetical encounter are irrelevant.

Truong relies on several cases to support his contention Phu detained him. His reliance on *People v. Kasrawi* (2021) 65 Cal.App.5th 751, 757, review granted September 1, 2021, S270040, and *People v. Garry* (2007) 156 Cal.App.4th 1100, 1111, is misplaced.  In those cases, the officers used a spotlight on the suspect.  Here, Phu did not illuminate Truong with a spotlight.

He also relies on *People v. Jones* (1991) 228 Cal.App.3d 519.  In that case, an officer pulled his patrol car "to the wrong side of the road," parked it "diagonally against the traffic," got out, and told the defendant, who was walking away, to """Stop. Would you please stop.""" (*Id.* at pp. 522-523.)  Here, although Phu parked his car on the opposite side of the street, he did not park diagonally to obstruct all traffic and did not obstruct Truong's path of travel.  Additionally, Phu did not order Truong to stop, he said, "What's goin' on?"  In view of all the circumstances, the trial court properly denied Truong's motion to suppress.

DISPOSITION

The judgment is affirmed.


                                    O'LEARY, P. J.

WE CONCUR:


BEDSWORTH, J.


MOTOIKE, J.