Filed 7/15/14  P. v. Jones CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C074114 |
| v. | (Super. Ct. No. 12F4600) |
| JEVIS JULIAN JONES, | |
| Defendant and Appellant. | |

A jury found defendant Jevis Julian Jones guilty of receiving stolen property. (Pen. Code, § 496, subd. (a).)  The trial court sustained three strike and two prior prison term allegations and sentenced defendant to serve eight years in state prison.

On appeal, defendant contends the trial court erred in denying his suppression motion alleging an unreasonable detention.  We conclude the detention was supported by reasonable suspicion and affirm.

FACTS

Since the only issue is the legality of defendant's detention, we take the facts from the suppression hearing.

At 2:00 a.m. on May 11, 2012, Redding Police Officers Dean Adams and Jon Sheldon responded to a complaint of trespassers in a room at a Vagabond Inn.  While working on the graveyard shift, Officer Adams regularly responded to this Vagabond Inn.

1

He also knew there were many problems concerning the motels in this area, including vehicle thefts, vehicle burglaries, and broken car windows. Officer Sheldon testified this part of Redding was considered a high crime area, with officers called in for incidents such as trespassing, squatters in motel rooms, vehicle thefts, drug sales, and robberies.

While they were returning to the patrol car after finishing the investigation, a person drove by in a pickup truck and said there was an adult Black male at the rear of the motel who was acting suspiciously and hiding. Officer Sheldon pointed out defendant to Officer Adams, and the two approached. Defendant was sitting or standing by the motel stairs with a bicycle leaning against a nearby wall. The stairwell is on the southwest corner of the motel and leads to the upper level rooms.

The officers asked defendant for identification but he did not have any. Officer Adams testified defendant was in a place the officer would not expect defendant to be unless he had a room at the motel. Officer Adams asked defendant where he was from; defendant was evasive, stating he was from Sacramento, did not have a room, and did not have an address. Officer Adams concluded defendant was trespassing based on the fact he had no business being in the motel parking lot or building at that time of night.

Defendant told Officer Sheldon he was meeting someone at the motel, a woman whose name he either could not or would not provide. Officer Sheldon noticed defendant kept moving throughout the entire encounter and was unable to tell them why he was there, making the officer increasingly suspicious.

Officer Adams asked defendant about the bicycle. Defendant said he got it from someone on the street whose name he could not recall. As a bicycle rider, Officer Adams knew the bicycle was worth about $500 to $1,000. He was suspicious someone from Sacramento without a place to live would possess such an expensive bicycle, so he went over and checked the bicycle's serial number. The serial number was called into dispatch, which reported the bicycle was recently stolen. Officer Sheldon then arrested defendant.

2

Officer Sheldon testified that during the conversation, Officer Adams told defendant to stand up and conducted a patdown search of him about 30 seconds into the encounter and before checking the bicycle's serial number. The patdown did not produce any evidence. Officer Adams testified he might have initially told defendant to sit down when he first saw him.

The trial court ruled defendant was not free to go about once the officers told him to sit and conducted the patdown. There was reasonable suspicion to detain defendant based on the high crime area, the time of night, defendant being in a place that is not the normal entry or exit for the motel, and the informant's description matching where defendant was hiding justified contacting defendant and questioning him. Defendant's suspicious answers to the officers' questions justified a continued detention until the officers could sort out the matter. The trial court denied the suppression motion finding the detention was supported by sufficient evidence, was not unduly prolonged, and the stolen bicycle was discovered within the scope of the legitimate detention.

## DISCUSSION

Defendant contends the trial court should have suppressed evidence of the stolen bicycle as the fruit of an unlawful detention. We disagree.

In reviewing a ruling on a motion to suppress, we defer to the trial court's express or implied factual findings when supported by substantial evidence and, based thereon, determine independently whether the search or seizure was reasonable under the Fourth Amendment. (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)

"A detention occurs '[o]nly when [an] officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen . . . .' [Citation.]" (*In re Randy G.* (2001) 26 Cal.4th 556, 562.) "A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v.*

3

*Souza* (1994) 9 Cal.4th 224, 231.) Further, " '[t]he possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. Indeed, the principal function of [police] investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal . . . .' [Citation.]" (*Id*. at p. 233.)

The reasonable suspicion requirement is measured by an objective standard, not by the officer's subjective suspicion. (*Graham v. Connor* (1989) 490 U.S. 386, 397 [104 L.Ed.2d 443, 456].) Thus, the circumstances known or apparent to the officer "must be such as would cause any reasonable police officer in a like position, drawing when appropriate on his [or her] training and experience [citation], to suspect the same criminal activity and the same involvement by the person in question." (*In re Tony C.* (1978) 21 Cal.3d 888, 893, fn. omitted.)

Defendant claims he was detained when ordered to sit down or stand up by Officer Adams, and also when he was subjected to the patdown. He also notes the officers were in uniform and had their flashlights turned on him as they approached. Defendant argues there was no reasonable suspicion to detain him because the anonymous citizen informant's tip was not corroborated and did not reliably assert criminality. He claims there was no evidence he was trespassing because he had not been asked to leave the area. Analogizing his case to *People v. Garry* (2007) 156 Cal.App.4th 1100 (*Garry*), defendant contends the time of day, presence in a high crime area, and his evasive answers did not justify his detention. Defendant asks us to reverse the denial of his suppression motion because there are no articulable facts supporting the trial court's decision.

We agree with defendant he was detained once Officer Adams ordered him to sit down or stand up because the order was an expression of authority clearly implying defendant was not free to leave or move about as he chose. However, we conclude the detention was supported by reasonable suspicion.

4

Defendant's reliance on the anonymous tip is misplaced. While an anonymous tip by itself cannot support reasonable suspicion absent other indicia of reliability (*Florida v. J.L.* (2000) 529 U.S. 266, 270 [146 L.Ed.2d 254, 260]; *Alabama v. White* (1990) 496 U.S. 325, 328-329 [110 L.Ed.2d 301, 308]), there was other evidence supporting reasonable suspicion. Here, the anonymous tip was not the sole or even the primary justification for defendant's detention. The officers relied on the tip to identify defendant. Once identified, the officers approached defendant and asked some questions. However, those actions by themselves do not constitute a detention. "Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen. [Citations.]" (*United States v. Drayton* (2002) 536 U.S. 194, 200-201 [153 L.Ed.2d 242, 251].)

"An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime. [Citation.] But officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation. Accordingly, [the United States Supreme Court has] previously noted the fact that the stop occurred in a 'high crime area' among the relevant contextual considerations in a *Terry* [*v. Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889]] analysis. [Citation.]" (*Illinois v. Wardlow* (2000) 528 U.S. 119, 124 [145 L.Ed.2d 570, 576].) Here, the anonymous citizen told the officers a person was acting suspiciously in the area where they found defendant. That area, in the back of the motel near the stairs leading to the second floor rooms, is a place one would expect to find only a resident or employee of the motel. Defendant could not give a reason for being there. He was likewise evasive about where he was from and where he lived. He was also evasive about how or from whom he obtained the expensive bicycle in his possession.

5

While defendant was briefly detained, evidence of criminality was found through the unobtrusive means of checking the bicycle's serial number and calling it in to dispatch.[1]

Defendant's reliance on *Garry* is misplaced. In *Garry*, a uniformed police officer was patrolling in a "high-crime, high-drug area where illegal street drugs were often sold and where police officers had been assaulted." (*Garry, supra*, 156 Cal.App.4th at p. 1103.) The officer saw Garry standing next to a parked car late at night and watched him for a few seconds. (*Id*. at pp. 1103-1104.) The officer then illuminated defendant with the spotlight on the patrol car, exited his vehicle, and "briskly" walked 35 feet in "two and a half, three seconds" directly to Garry while questioning him about whether he was on probation or parole, even though Garry had indicated he was merely standing in front of his home. (*Id*. at p. 1104.) When Garry admitted we was on parole but denied possessing any weapons, the officer grabbed Garry, who started "to pull away 'violently,' " and put him on the ground. (*Ibid*.) The officer handcuffed and arrested Garry and discovered cocaine in a search incident to arrest. (*Ibid*.)

The court in *Garry* concluded the officer's spotlighting of Garry, and the rapid approach in which the officer "all but ran directly at" Garry while questioning him about his legal status and disregarding Garry's explanation that he was merely standing in front of his house, were sufficiently "aggressive and intimidating actions" to communicate an "unmistakable 'tone,' albeit largely through non-verbal means, 'indicating that compliance with the officer's request might be compelled.' [Citation.]" (*Garry, supra*, 156 Cal.App.4th at pp. 1111-1112.) In contrast, the officers here did not use their patrol car's spotlight to intimidate defendant, instead relying on flashlights to provide the necessary illumination for this late night encounter. Also unlike *Garry*, defendant was not in front of his home, but in a high crime area with no identification, no room in the motel, no address, and no reason to be there. Finally, and again unlike *Garry*, the officers

---

[1] Since the patdown did not produce any evidence against defendant, either directly or indirectly, we do not address whether it was supported by reasonable suspicion.

here did not grab defendant after he denied possessing weapons.  Rather, they briefly detained him after he gave evasive answers to their routine questions.

Taken in the context of the location (late at night in a high crime area) and defendant's evasive responses to the officers' questions, we conclude there was reasonable suspicion of potential criminal activity that warranted defendant's detention for further investigation.

## DISPOSITION

The judgment is affirmed.


　　　　　　　　　　　　　　　　　HOCH　　　, J.



We concur:



　　　HULL　　　, Acting P. J.



　　　ROBIE　　　, J.


7